People v. Holladay et al.

## THE PEOPLE v. BENJAMIN HOLLADAY AND JESSE HOLLADAY.

COMPLAINT IN ACTION TO RECOVER TAXES.—In an action brought by the people to recover judgment for delinquent taxes assessed during the three years preceding March 1st, 1861, the complaint is fatally defective if it does not aver that the Tax Collector has failed to collect the taxes in question by reason of his inability to find, seize, or sell property belonging to the delinquent.

POWER OF LEGISLATURE.—The Legislature possesses full power to legalize defective and invalid assessments of delinquent taxes, and to provide for their collection.

ACT OF MAY 17TH, 1861, TO LEGALIZE ASSESSMENTS. — The first section of the Act of May 17th, 1861, entitled "An Act to legalize and provide for the collection of delinquent taxes in the counties of this State," legalizes every assessment for taxes made during the three years preceding March 1st, 1861, however defectively and imperfectly it may have been made in any respect.

COMPLAINT WHERE DESCRIPTION DEFECTIVE IN ASSESSMENT.—If an assessment of a tax made during the three years preceding March 1st, 1861, is defective in not stating the kind and quantity of property assessed, whether real or personal, or if real, in not giving its description, the pleader, in an action brought to recover judgment for such tax, may, if the same can be ascertained, insert in his complaint the necessary averments as to kind and quantity or description.

ASSESSMENT OF PERSONAL PROPERTY.—A complaint, under the Act of May 17th, 1861, which avers that the tax "was levied upon and assessed against personal property," contains no cause of action. The complaint should not only aver

that the tax was levied upon and assessed against personal property, but also the kind or kinds of personal property.

IN WHAT COUNTY ASSESSMENT TO BE MADE.—All personal property within a county on the first Monday of March, is assessable in that county if not removed from that county before the assessment is actually made, and if assessed in that county before it is removed from it, the tax is payable in that county; but if removed from that county to another before actually assessed, the Assessor of that county may make the assessment, and transmit the same to the Assessor of the county to which the property is removed.

WHERE TAX PAYABLE.—Taxes are due and payable in the county where the property is first assessed; and if the property, after it has been assessed, be removed into another county, and there assessed, the first assessment is unaffected thereby, and payment of the latter assessment is not a discharge of the former.

*By* CURREY, J.—RHODES, J., *concurring:*

CONSTRUCTION OF ACT OF MAY 17TH, 1861.—The Act of May 17th, 1861, was only designed to legalize assessments in some respects formally defective, though substantially good, and was not intended to make good an assessment which was totally invalid for not stating either the kind or quantity of property assessed, or not describing it, when real estate.

POWER OF LEGISLATURE.—When an assessment is so defective as to be totally void, the Legislature cannot cure it by legislative enactment having a retrospective operation, so as to create an obligation where none existed before.

APPEAL from the Seventh Judicial District, Solano County.

The facts are stated in the opinion of the Court.

*Haight & Pierson,* for Appellants.

*J. G. McCullough, Attorney-General,* for Respondent.

By the Court, SANDERSON, C. J.

This is an action to recover delinquent taxes on certain personal property, brought under the provisions of the Act of the Legislature of the 17th of May, 1861. (Statutes of 1861, p. 471.)   After stating the title of the action the complaint proceeds as follows:

The plaintiff above named comes, by J. C. Hinckley, District Attorney for said county, and in pursuance of an Act of the Legislature of the State of California, entitled "An Act to legalize and provide for the collection of delinquent taxes in the counties of this State," approved May 17, 1861, complains

against the defendants Benjamin Holladay and Jesse Holladay, known by the firm name of "Holladay & Brother," and for cause of action alleges that the said defendants are indebted to plaintiff in the full sum of three hundred and seventy-one dollars and twenty-one cents, which sum is due, owing and payable from defendants to plaintiff for public revenue and taxes levied as follows: Tax for State purposes, one hundred and sixty-five dollars; tax for county purposes, two hundred and six dollars and twenty-one cents. Said taxes were levied upon and assessed against personal property valued at twenty-seven thousand five hundred dollars, belonging to said defendants, in the County of Solano, for the year 1858, etc.

It is claimed by the appellants that the foregoing complaint does not state facts sufficient to constitute a cause of action, and in support of this objection to the complaint they assign the following grounds: First—Because it does not allege that the Tax Collector has failed to collect the taxes in question by reason of his inability to find, seize or sell property belonging to the delinquents, as required by the second section of the Act under which the suit is brought. Second—Because it does not designate the "kind and quantity" of the personal property upon which the taxes were levied and assessed, as required by the second section of said Act.

1. The first point seems to have been determined in favor of the appellants by the case of The People v. Pico, 20 Cal. 595. That action, like the present, was brought under the provisions of the Act of the 17th of May, 1861. In that case the taxes sued for had been assessed against real property, which constitutes the only difference between the two cases. The same points were made by the appellant in that case which are made in this, except so far as the second point may be affected by the character of the property against which the taxes were assessed. Both points were there decided in favor of the appellants.

Upon this point the Court held, in effect, that the inability of the Tax Collector to find, seize and sell property belonging to the delinquent, was made by the statute a condition precedent to the right of action therein conferred upon the State;

and that the District Attorney had no authority to commence an action to recover unpaid taxes, except in cases in which the Tax Collector had failed to collect them for the reasons specified in the Act; and that without an averment of such failure on the part of the Tax Collector, the complaint fails to state a cause of action.    The same principle was announced by us in the case of *The People ex rel. Hastings* v. *Jackson*, 24 Cal. 630, where it was held that conditions precedent must be pleaded in all cases, except those arising out of contract, in which latter cases, the pleading of conditions precedent is excused by the sixtieth section of the Practice Act, and a general averment of performance made sufficient.

2. We do not consider the case of *The People* v. *Pico* as conclusive of the present case upon the second point made by appellants.    The taxes sought to be recovered in that case had been assessed against real property, which was described in the complaint as " the unsold portion of eleven square leagues of land known as Los Mokelamos."    The second section of the Act of the 17th of May, 1861, provides that the property, if real estate, shall be described in the complaint; and the Court held that the description was insufficient, and thus far the decision in that case is undoubtedly correct; and further than this it was unnecessary for the Court to go for the purpose of deciding that case, and hence so far as that case seems to hold that the assessment must contain a description sufficient for the purposes of the complaint, and that if the assessment is fatally defective in that respect no cause of action can exist under the Act in question, it may be regarded as *obiter dictum.*

The object of the Act, as declared in the title, is to legalize and provide for the collection of delinquent taxes in the counties of this State.    The question as to the power of the Legislature to pass such Acts has been decided in favor of the power too often to admit of doubt at the present time.    The first section of the Act provides as follows:

" SECTION 1.    The assessments of taxes upon all property, real and personal, in the several counties in this State, whether

for State or county purposes, for the fiscal year," etc.,     *     *
" shall be and are hereby legalized and confirmed and are ren-
dered valid and binding, both in law and equity, against the
persons and property assessed."

This language is broad and comprehensive, and covers every
assessment which was in fact made, however defectively and
imperfectly it may have been made in any respect.   It make
no  distinction  between  defects,  but  cures  them  all ;  it dis-
criminates in favor of none, and excepts none from the opera-
tion of the statute.   It does not provide that such assessments
as have such and such defects shall be legalized and that other
assessments which have such and such other defects shall be
unaffected and left to stand as they stood before, but, on the
contrary, the Act proposes to heal every infirmity wherever
found  and  give  full  vigor  to  every  assessment which was in
fact made during the three fiscal years mentioned in the Act.
Where the statute makes no exception the Courts can make
none.   Where  an  assessment was  made  during  those years
against a  person  or  against  property, however defectively in
any particular,  in  view  of  the  law  as  it  then  stood,  such
assessment, in our judgment, was made perfect in the eye of
the law by the Act in question.   Matters of description con-
stituted the more common and obvious defects in such assess-
ments, and to hold that such defects are not cured, so far as
the validity of the assessment is concerned, would be to defeat
the main object and purpose of the Act.   But while impart-
ing validity to  the  assessment, the  law does  not  propose to
conceal from the taxpayer the purpose of the tax, nor the
kind, or quantity, or description of the property upon which
the tax has been imposed ; but on the contrary, if the tax is
not paid and suit has to be brought therefor, the District
Attorney is required to designate in the complaint the amount
of taxes due and unpaid, whether the same is for State or
county purposes, and, if for both, how much for each ; also,
the kind and quantity of property assessed, both real and
personal, and, if real, its proper description.   Thus the com-

plaint is made to supply the various defects which, it is supposed by the Act, may be found to exist in the assessment. If the complaint does not do this, the same consequences follow as in other cases. By way of illustration, take the case of *The People* v. *Pico*. There the property was described as the " unsold portion of eleven square leagues of land known as Los Mokelamos." This description was defective in not designating by metes and bounds, or some other sufficient mode of identification, the unsold portion of the Los Mokelamos; and for this defect the assessment was invalid; but this defect was cured by the Act in question and its place in the assessment allowed to be supplied by a proper description in the complaint. Had the complaint in that case contained such a description, it would in our judgment have stated a cause of action so far as the point under consideration is concerned.

The case of the *People* v. *Pico* assumes that an assessment may have certain defects which are fatal, and certain other defects which are not fatal, the first being incurable and the latter curable. We are unable to comprehend the distinction attempted to be made. An assessment not fatally defective stood in no need of the healing power of the Legislature and does not therefore come within the class upon which the statute was intended to operate. It was into fatally defective assessments that the Legislature intended to infuse life, and if the statute does not operate upon such it necessarily operates upon none. The doctrine in Pico's case seems to us to nullify the statute under consideration, by making the assessment depend upon antecedent laws for its validity rather than the statute. If the assessment must furnish the material for the complaint and the District Attorney cannot go beyond the description of the property there found and can supply none of its defects, the passage of the Act is question was an idle ceremony so far as it attempts to legalize imperfect assessments.

The property in the present case is described as " personal property valued at twenty-seven thousand five hundred dol-

lars." It is presumed that this description is taken from the assessment, and, if so, the assessment, but for the Act of the 17th of May, 1861, would be fatally defective ; but that Act cures the defect, and the assessment, which was previously worthless, has become legal and binding, and may be enforced by suit, provided the complaint supplies a proper description. The statute requires that the kind and quantity of the property, *both* real and personal, shall be designated in the complaint—that is to say, the kind and quantity of real property shall be designated, and the kind and quantity of personal property shall be designated. The use of the word "both" in the connection in which it is used makes this reading imperative. The word "kind" does not distinguish between and refer solely to the terms real and personal, but the latter terms are used generically, and the word "kind" refers to the species of each as defined in the Revenue Act. The statute divides personal property into various classes, and a lumping assessment under the general head of personal property is insufficient. It would be impossible to fix a valuation upon property so assessed, nor could the valuation be corrected by the Board of Equalization. The different classes must be stated—as, for example, goods, solvent debts, horses, cattle, etc. The complaint in this respect is deficient and obnoxious to the objection made by the appellants.

3. Another point is made upon which we deem it proper to express an opinion, for the purpose of furnishing a rule of decision upon a second trial, should one be had. It appears from the evidence that the property against which the taxes in controversy were assessed consists of cattle. On the first Monday in March of the year for which the taxes were assessed, these cattle were in Solano County. Between that time and the month of May following they were removed to the County of Alameda, and it is claimed that they were there assessed and the taxes paid, and that therefore the appellants ought not to be made to pay the taxes which were assessed in Solano County, for if so he will be made to pay taxes upon the same

People v. Holladay et al.

property twice.  Of course the law does not exact double taxes.

It is the duty of the Assessor to assess all taxable property in his county between the first Mondays of March and August in each year.   All property which is within his county on the first Monday in March is assessable in his county, provided it is in his county at the time the assessment is made; and the taxes thereon are payable in his county.   But, if the property is removed from his county to another before the assessment is actually made, he cannot make an assessment which will be payable in his own county; but he may make the assessment in the manner prescribed in the twenty-sixth section of the Revenue Act (Wood's Digest, p. 622) and transmit the same to the Assessor of the proper county.   The taxes are due and payable in the county where the property was first assessed, and if the property, after it has been assessed, be removed into another county and there assessed, the first assessment is unaffected thereby, and a payment of the latter assessment is not a discharge of the former.   In other words, the first assessment, if the property was in the county at its date, is the lawful one as between the two, and if the taxes be paid upon the latter assessment it is a mere voluntary payment, and is no answer to a demand for payment upon the first. Hence, if the cattle in question were in Solano County at the date of the assessment made by the Assessor of that county, the taxes were legally due in that county, and a payment of taxes subsequently assessed upon them in Alameda County was no discharge of the debt, but a mere voluntary payment.   It was the business of the appellants to know whether their cattle had been assessed in Solano County before their removal; and if so, such assessment and payment thereon would have been a complete answer to the claim of Alameda County.

The judgment is reversed and a new trial ordered, with leave to the respondent to amend the complaint.

People *v.* Holladay *et al.*

CURREY, J., concurring in the judgment, but dissenting from the opinion in part.

I agree with the majority of the Court that the judgment should be reversed, but I am not prepared to subscribe to the doctrines of the prevailing opinion in this case to its full extent on the question of legislative power.

The first section of the Act of 1861, under which this action was brought, provides, that the assessments of all property, real and personal, for certain specified years, " shall be and are hereby legalized and confirmed, and are rendered valid and binding, both in law and equity, against the persons and property assessed." The second section of the same Act makes it the duty of the District Attorney to commence civil actions for the recovery of unpaid taxes in case the Tax Collector is unable to collect the same, and he is required to designate in the complaint the amount of taxes due and unpaid, and the kind and quantity of property assessed, both real and personal, and to describe it therein if it be real property. This Act presupposes the existence of an assessment to which the words " are legalized and confirmed, and are rendered valid and binding," have direct relation.

Then the first inquiry must be to ascertain if an assessment was made; and to determine this involves the further inquiry as to what acts were performed by the Assessor to effect the assessment alleged to have been made. The Act of 1857, entitled "An Act to provide revenue for the support of the Government of this State," prescribes the steps to be taken and the acts to be performed in order to create an assessment. These steps and proceedings are the conditions on which all subsequent proceedings for the enforcement of the payment of taxes depend for any vitality whatever.

The various pre-requisite acts which must be performed to constitute the assessment when made, are sometimes, and as experience has proved are often performed imperfectly and informally; that is to say, are so performed as to come short of a full compliance with the requirements of the law when

strictly interpreted. Assessments of this character the Act of 1861 was designed to aid, and in my judgment was the only class of defective assessments to which it was in the power of the Legislature to administer a cure.

Perhaps there is no doctrine better settled than that no intendment is to be made in favor of the regularity of the proceedings of Courts or officers of inferior or special jurisdictions. (*Thatcher* v. *Powell*, 6 Wheat. 119; *Williams* v. *Peyton*, 4 Wheat. 77; *Bloom* v. *Burdick*, 1 Hill, 141; *Sharp* v. *Spier*, 4 Hill, 86; *Striker* v. *Kelly*, 7 Hill, 29; *Prosser* v. *Secor*, 5 Barb. 611; *Sibley* v. *Waffle*, 16 N. Y. 190.)

In *Sharp* v. *Spier*, Mr. Justice Bronson said: "Every statute authority in derogation of the common law, to divest the title of one and transfer it to another, must be strictly construed or the title will not pass." And in *Striker* v. *Kelly* he said: "It is a familiar doctrine in relation to statute sales, that it lies on the purchaser to show a strict compliance with the statute. He must make out his case affirmatively, showing step by step the existence of all the facts on which the right to sell is made to depend."

These authorities are referred to mainly to show the general state of the law relating to the subject, and that the Act of 1861 was only intended by the Legislature, having a correct appreciation of these doctrines of the law, to cure defects which, under the settled rules of construction, would defeat assessments in some respects formally defective, though substantially good. The same Act, as already appears, provides that where a suit shall be commenced to recover the unpaid taxes levied, the amount of which was ascertained by the assessment fixing the value of the property, the complaint must show the amount of taxes due and unpaid, and must state the kind and quantity of property assessed; and if the property were real estate, the same must be described in the complaint; and the Act declares that "the defendant shall not be allowed to set up or show any informality in the levy or assessment as a defense."

The evils remedied by the Act of 1861 seem to have been

those existing for want of a proper observance of formalities of subordinate importance, but not those vitally affecting the levy and assessment.   This conclusion seems to me to be necessary in order to give any effect to this Act, for the reason that the Legislature had not the power to render an assessment valid and binding which was originally invalid in substance, and which was therefore void.   It may be asked, what are the informalities which may be cured, and what are the matters of substance to which the healing power of the Legislature cannot extend?   The statute requires the Assessor to do certain things to make an assessment, and to accomplish this end the things required must be performed in some manner.   The manner or mode of performance may in some particulars be of the essence of the assessment, and in others not so.   Where the act to be done is essential to or constitutive of the thing to be accomplished, its omission cannot be cured by legislative enactment having a restrospective and retroactive operation, so far as to impair rights already existing, or to create a new obligation or impose a new duty or attach a new disability in respect to transactions or considerations already past.   (*The Society*, etc. v. *Wheeler*, 2 Gallison, 139.)

To hold that the Legislature is competent to render valid and binding from the beginning that which by the law was at the time invalid and void seems to me to be involved in an inextricable absurdity.   As well might the Legislature undertake to create rights unknown to the laws of the land and give them a retrospective existence, and therewith furnish to those who, by a fiction, possessed such rights, remedies for injuries affecting them before they had existence.   It would, I apprehend, be equally in the power of the Legislature to legalize and render valid and binding in law an abortive proceeding instituted in past years against a citizen to divest him of his property, without affording him an opportunity to be heard in his defense, as to declare a radically and invalid assessment valid and binding *ab initio.*

A statute which in its scope and spirit has for its object to make valid and binding the acts of Courts or officers, which

People *v.* Holladay *et al.*

when performed were null and void, is to my mind in viola-
tion of the rights of the citizens affected by it; and measured
by a moral standard should be condemned by every Court of
justice which may be called on to deal with it.

Statutes which are retrospective in their character and to
which is given a retroactive effect, have generally been consid-
ered in violation of common right and common reason, and
*ipso facto* void, independently of any constitutional restrictions
against their passage. (*Bowman* v. *Middleton*, 1 Bay's R. 252;
*Bonaparte* v. *C. and A. R. R. Co.* 1 Bald. C. C. R. 223.)
The law is a rule of civil conduct, and from its very nature
must be prospective. In Smith's Commentaries, section one
hundred and fifty-three, it is said, " Retrospective laws are
not only inconsistent with the idea of a law, as a rule of civil
conduct, but they are in many instances only the exercise of
powers which are in their nature strictly *judicial*, instead of
*legislative*. Such laws, when only such, look not to the future,
but upon the past; or, in other words, pronounce judgment
upon acts done antecedent to their adoption; and in this
respect they assume a *judicial* power, as contradistinguished
from what is strictly *legislative* power. They assume to give
character to facts which they did not possess at the time they
took place, and then to judge of them in the new character
thus legislatively created for them; to settle, in some instances,
old rights, depending on laws as they existed before the Act
was passed, by new principles created and applied by the
retrospective Act, having no existence antecedent to the time
of its passage, which then, and not till then, sprang into
being."

I do not object that the Legislature cannot pass remedial
statutes, affording the means to enforce rights on the one
hand, and the performance of obligations on the other, which
had existence before the remedy was provided; but my objec-
tion opposes any construction of the Act of 1861 which has
the effect to give to an assessment a character which it did
not possess at the time it passed from the officers whose duty
it was to see that it was made.

The language of the Act is that certain assessments "are hereby legalized and confirmed and are rendered valid and binding, both at law and equity, against the persons and property assessed." If the Act was designed to do more than to remedy defects of a mere formal character, and which ordinarily would be remedied by the principles which are the basis of the maxim, *De minimis non curat lex*, then it must be held to have assumed to give a character to the assessment which it did not have, and then further to judge of it in the habiliments of its new creation, and that, too, without affording to the party affected by it any chance whatever to obtain a reduction of the amount thus constructively assessed, however excessive and unjust it might be. If the Act goes to this extent it should be restrained. It should be limited to the cure of infirmities of minor importance, which, according to the rules of construction applied in the consideration of the proceedings of Courts and officers of inferior jurisdictions, would render ineffectual the assessment for any efficient purpose.

While I admit that the Legislature has the power to heal infirmities arising from a failure to pursue with exact precision the course prescribed in matters of a formal character, I deny its power to cure evils affecting the substance of the assessment; because in the one case the law is remedial and operates prospectively, and in the other it is curative and retrospective and in its practical working deprives the citizen of his property without due course of law. Give to the Act the effect that is claimed for it on behalf of the State and it furnishes to the public prosecutor a case, in its living essence of legislative creation, falsely antedated, which the citizen who is made the victim is not permitted to gainsay by a statement of the truth, that no valid assessment was made; but he is permitted, after first assuming that a valid and binding assessment was made at the time alleged in the complaint, to answer that he has paid the taxes not necessarily on the property set down and described in the assessment roll, but on the property described in the complaint.

I cannot believe that the legislative omnipotence, with all its creative energies, can perform the miracle of creating a thing whose origin shall be of years that have passed; nor do I believe the Legislature has the power to deny to the citizen the right to be heard in defense of his person or property.

RHODES, J., also concurring in the judgment, but dissenting from the opinion in part.

I concur with the majority of the Court in reversing the judgment of the Court below, but I agree with Mr. Justice CURREY in his dissenting opinion; and I would further add, that if it can be held that all the acts—be they apparently of the most formal character—of the Assessor and the other officers charged by law with the performance of the series of acts that are required to be done before the taxes are payable, are essential and constitute a part of the substance of the assessment, without which the assessment is invalid, then, in my opinion, the Legislature cannot dispense with the performance of any of those acts in past transactions, and thus create a cause of action where none existed at the time of the performance of the last official act.