THE PEOPLE *v*. J. M. NILES, JAMES SHERRY, AND WILLIAM TARDIFF, AND THE SCHOONER WILLIAM IRELAND.

WHERE PERSONAL PROPERTY MUST BE TAXED.—Personal property *is to be* assessed and taxed in the county in which it is situated, except money and gold dust, which may, at the option of the owner, be taxed in the county in which he resides.

*Situs* OF PERSONAL PROPERTY FOR TAXATION.—To authorize the taxing of per-sonal property in any other county than that in which the owner resides, it must appear that such property is kept or maintained in such county, and is not there casually, or *in transitu*, or temporarily, in the ordinary course of business or commerce.

IDEM.—A vessel sailing from the port in which the owner resides is not liable to taxation in another county because it is temporarily in such other county for the purpose of being freighted.

APPEAL from the District Court, Seventh Judicial District, Mendocino County.

Action to recover a tax assessed on the schooner William Ireland, in the County of Mendocino. The Court below found, as a conclusion of law, that the schooner "William Ireland had no *situs* in Mendocino County, and was not subject to taxation there" at the time of the assessment. Whereupon judgment was entered for defendants. The People appealed.

The other facts are stated in the opinion of the Court.

*Thomas B. Bond,* for Appellant.

The vessel was in the County of Mendocino at the time of the assessment; therefore, it could not, at that time, be assessed in any other county, because all property must be in the county where assessed at the time the assessment is made. Vessels are personal property, and have no fixed *situs.* (2 Bouvier's Law Dic. 528.) "All property shall be assessed and taxed in the county in which such property is situate, without respect to the residence of the owner thereof." (2 Hitt. 6,286.)

How was the Assessor of Mendocino County to know whether the William Ireland would go to San Francisco, or some other place? All the facts warranted the Assessor of Mendocino County in believing that the "home port" of the William Ireland was not in San Francisco, as it is plain the owners did not believe the vessel was properly assessable there. This Court said in the case of *The People* v. *Holladay,* 25 Cal. 308, which was a case where there had been two assessments, in different counties:

"The taxes are due and payable in the county where the property was first assessed, and if the property after it has

been assessed be removed into another county and there assessed, the first assessment is unaffected thereby, and a payment of the latter assessment is not a discharge of the former. In other words, the first assessment, if the property was in the county at its date, is the lawful one as between the two, and if the taxes be paid upon the latter assessment it is a mere voluntary payment, and is no answer to a demand upon the first."

*Jo Hamilton,* Attorney General, also for Appellant.

Upon the facts of this case it seems clear that under the decision of this Court in the case of *The People* v. *Holladay,* 25 Cal. 300, that judgment below should have been rendered for appellants. The cases are almost parallel, and the reasons given by the Court in that case should govern the decision in this. The case of *The People* v. *Holladay,* 25 Cal. 307, which was a case of double assessment, holds, in effect, that the first assessment, if the property was in the county at its date, is the lawful one as between the two, and if the taxes be paid on the latter assessment, it is a mere voluntary payment, and is no answer to a demand for payment upon the first.

*R. McGarvey,* and *Hambleton & Gordon,* for Respondents.

Chattels personal follow the domicil of the owner, if not fixed or located elsewhere.

While a taxpayer may, by *his acts,* without intending it, or against his wishes, fix that location apart from his domicil, we know of no instance where that result follows in the teeth both of his acts and intentions.

Take, for example, the case of a vessel under like circumstances with those at bar, but *en route* from San Francisco for the Port of Crescent City. Off the harbor of Mendocino she is dismasted in March of any given year by a storm, and touches at that harbor to refit. The vigilant Assessor of that county would be as much justified in seizing her for

taxes before she could get out, as he was in the instance we are arguing. Such a craft would most indisputably be *in* Mendocino County, but like our case, with no intention of remaining—not only for a *temporary* purpose while there, but also having a *status* affixed before coming there of being in transit, and in good faith acting it out.

The District Attorney quotes from Bouvier: "Vessels are personal property, and have no fixed *situs ;* " citing therefor 2 Bouvier's Dictionary, 528.

Upon examining his authority we are satisfied that he has confounded the law of *rei-sitæ*, of the forum and remedy, with that under discussion.

The Revenue Law itself refutes the position of appellant. It provides that "all steamers, vessels, and water craft of every kind and name, either owned in whole or in part by a resident or residents of the State, or navigating the waters of any river or bay within the State, and *having a general depot or terminus* within the State," shall be deemed personal property, and listed as such.

It recognizes the fact that a vessel, though navigating the waters and bays of this State, may have a general depot or terminus among many domestic ports—that there might be some stability of location possible in the case of water craft.

The provision was inserted doubtless for the purpose of attaining some uniformity and coincidence between the fiscal regulations of the State and those of the United States, which latter require and demand a home port.

The residence of respondents, their place of business, and the employment of the schooner Wm. Ireland in transporting lumber to San Francisco, the fact of her license and enrollment at the Custom House there—are all admitted, and conclusively establish her general depot or terminus to be at that port. (*Hays* v. *Pacific Mail Steamship Co.*, 17 How., U. S., 598; 1 Stats. at Large, 287, 305.)

By the Court, SANDERSON, J.:

It is by law made the duty of every County Assessor, between the first Monday in March and the first Monday in August in each year, except as otherwise required by special enactment, to ascertain by diligent inquiry and examination, all property in his county, real and personal, subject to taxation, and also the names of all persons, corporations, associations, companies or firms, owning, claiming, or having the possession or control thereof, and, thereupon, to list and assess the same accordingly. It is also made his duty at the same time to ascertain from all such persons, corporations, associations, companies, and firms, what real and personal property, if any, they own, claim, or have the possession or control of, in any other county of the State, which they do not, of their personal knowledge, know has been already assessed in such other county for that year, and to require them to give a list thereof, which list shall particularly describe each tract of land and each city or town lot contained therein, so that the same may be found and known thereby; and all vessels, steamers, and other water craft; and all deposits of money and gold dust, unless the same shall have been included in the first list, which may be lawfully done. These latter lists, or one made from them, the Assessor is required to transmit to the Assessor of the proper county; that is to say, the county where the property is situated, in the sense of the statute, who is required to assess the property therein contained, unless he has already done so. (Statutes 1861, p. 419, Secs. 13–15.)

From these provisions the intent is clear to render all personal property taxable in the county in which it is situated, between the first Mondays in March and August, except money or gold dust, which may, at the option of the owner, be taxed in the county in which he resides; and it follows therefrom that personal property, except money and gold dust, for all the purposes of taxation, is to be considered like

real estate, as having a *situs* of its own, independent of the domicil of its owner.

By thus assigning to personal property a *situs* for the purposes of taxation, we do not consider, however, that it was intended to authorize the listing or taxing out of the owner's county of such personal property as might casually, in the usual and ordinary course of the owner's business, be found in such county on the first Monday in March, or be subsequently, in like manner, brought into it between that day and the first Monday in August. If A. resides at Placerville, in El Dorado County, and is engaged in teaming between that place and Folsom, in the County of Sacramento, and, in the course of his business, chances to be with his team at Folsom, discharging or taking freight, on the first Monday in March, or any subsequent day between that day and the first Monday in August, the *situs* of his team is not, in the sense of the statute, in Sacramento County, but in El Dorado County. If A., residing in Yolo County, drives his carriage into Sacramento County, or has it driven there by his coachman, on the first Monday in March, or any subsequent day between that day and the first Monday in August, it does not thereupon become the duty of the Assessor of Sacramento County to list and assess it as personal property " in his county." It is in his county, it is true, but it is not so in the sense of the statute—its *situs*, for the purposes of taxation, is in Yolo County.

To authorize the taxing of personal property in any other county than that in which the owner resides, it must appear that the property is being to some extent kept or maintained in such county, and not there casually, or *in transitu*, or temporarily in the ordinary course of business or commerce. If A., a resident of San Francisco, has cattle and sheep, which he keeps or herds or pastures in San Mateo County, and has them there for that purpose on the first Monday in March, or at any subsequent time between that day and the first Monday in August, they are taxable in San Mateo County, unless they have been brought there at some time subsequent

to the first Monday in March and have been already assessed in the county from which they were brought. (*People* v. *Holladay*, 25 Cal. 307.)

The case shows that the schooner William Ireland, on the 27th of March, 1867, the day on which she was assessed by the Assessor of Mendocino County, was the property of the respondents, Sherry and Tardiff, who were, and had been for a long time prior thereto, residents of the City and County of San Francisco, and were engaged in shipping lumber to the City of San Francisco from different points on the Bays of San Francisco and Mendocino; that from the 1st to the 22d of March she was at the Port of San Francisco, where she had been licensed and enrolled, according to the laws of the United States, and on the day last named was sent by them, in charge of defendant, Niles, to Mendocino County, for a cargo of lumber, where she remained no longer than was necessary to take cargo, and then returned to San Francisco. That, while taking cargo, she was assessed by the County Assessor of Mendocino County, and, after her return, was again assessed by the Assessor of the City and County of San Francisco, and the tax, in due time, paid by the respondents.

For the reasons already suggested, we think the *situs*, in the sense of the statute, of the William Ireland, between the first Monday in March and the first Monday in August, 1867, was not in Mendocino County, but in the City and County of San Francisco.

Judgment affirmed.

Mr. Justice RHODES expressed no opinion.