# THE SUPREME COURT

OF THE

## STATE OF NEVADA.

## APRIL TERM, 1883.

[No. 1132.]

## F. BARNES, RESPONDENT, v. W. W. WOODBURY, APPELLANT.

TAXES—SITUS OF CATTLE—RESIDENCE OF OWNER.—*Held*, that the *situs* of cattle for the purpose of taxation, is not to be controlled by the mere residence of the owner.

IDEM—HOME RANCH—Respondent owned, and resided upon, real estate in Eureka county, and during the winter months his cattle were kept thereon. This land was at all times the home ranch, where his business was conducted and his cattle cared for and managed. During the grazing season the cattle were permitted to graze upon the public domain in both Eureka and White Pine counties, and at the time of the assessment the cattle were grazing within the boundaries of White Pine county, where they were assessed. Respondent owned no real estate in that county: *Held*, that the *situs* of the cattle, for the purpose of taxation, was at the home ranch, where they belonged. (Leonard, J., dissenting.)

APPEAL from the District Court of the Sixth Judicial District, Eureka County.

The facts are stated in the opinion.

*Baker & Wines*, for Appellant:

By a fair construction of these sections (2 Comp. L. 3130, 3132-3), it would seem that if a resident of Eureka county should permit his property to remain in the county of White Pine, between the first Monday in April and the first Monday of September, the assessing season, that the tax thereon for such year would rightfully belong to White Pine county. In support of this view we cite: *People* v. *Holladay*, 25 Cal. 301; *People* v. *Niles*, 35 Cal. 282.

*Merrill & Fitzgerald*, for Respondent:

The property in controversy was a part of the wealth of and belonged to Eureka county, and its *situs* for the purposes of taxation was in Eureka county. (*Conley* v. *Chedic*, 7 Nev. 341; *People* v. *Niles*, 35 Cal. 282; *People* v. *Whartenby*, 38 Cal 466; *Oakland* v. *Whipple*, 39 Cal. 114; *Hayes* v. *Pacific M. S. Co.*, 17 How. 597.)

By the Court, HAWLEY, C. J.:

Eleven hundred head of cattle were assessed to and the tax thereon paid by respondent in Eureka county and in White Pine county. He brought this suit against the assessor of White Pine county to recover the amount of taxes, paid under protest, upon the assessment of the property in White Pine county.

The court overruled a demurrer interposed by appellant and rendered judgment in favor of respondent.

This appeal presents the single question whether, upon the facts alleged in the complaint, the cattle were taxable in White Pine county.

Under the revenue law of this state it was the duty of the assessor of White Pine county (and of every county assessor) between the first Monday in April and the second Monday in September, to assess all real estate and personal property "within his county," subject to taxation. (Stat. 1861, 65.)

If the *situs* of the cattle was within the county of White Pine, and subject to taxation therein, the demurrer should have been sustained.

The laws of every state control, of necessity and of right, all the real and personal property within its borders, and where

the personal property is of a character visible to the eye of the taxing power, the legal fiction that personal property follows the residence. of the owner does not apply.    This principle is very clearly and forcibly stated in *Hoyt* v. *Commissioners*, 23 N. Y. 224, where the domicile of the owner was in one state and the tangible personal property was in another.

From an examination of the authorities and a perusal of the revenue laws of this state, it is evident that the *situs* of the cattle in question is not to be controlled by the mere residence of the owner.

A man may reside in Storey county and own real estate within White Pine county, and have cattle kept grazing and cared for thereon, and both the real estate and personal property would be properly assessable in White Pine county. Personal property of this character, unlike "money," etc., "is to be considered, like real estate, as having a *situs* of its. own, independent of the domicile of its owner." (*People* v. *Niles*, 35 Cal. 286.)

"The truth is, that personal, as well as real estate, has a locality, although not so permanent, nor always ascertained with so much certainty." (*State* v. *Falkinburge*, 15 N. J. L. 323.)

But, by assigning to this class of personal property a *situs* for the purpose of taxation, independent of the mere residence of the owner, it does not necessarily follow that the property can be legally assessed in whatever county it may first be found during the period of assessment.

The revenue laws are framed with the idea that there should be a harmonious system to govern and control cases of this character.

If a man resides in Eureka and is there engaged in the general business of teaming and delivering freight to various places in other counties, and in the course of his business his team is driven into White Pine county, and is "within" said county when the assessing season commences, and remains therein in the prosecution of his business during the greater portion of the time between the first Monday in April and the second Monday in September, the *situs* of his team for the pur-

pose of taxation is not, in the sense of the statute, within White Pine county, but it is within the county of Eureka, at the home station where it belongs.

In declaring that the county assessor should assess all personal property within his county, it was not intended by the legislature to authorize him in assessing all the personal property that he could find within his official limits at any time while making his assessments. It was only intended to tax such personal property as is actually located or used within his county "with something like permanency, and not having its actual location or home somewhere else." (*State* v. *Haight,* 30 N. J. L. 429.)

The *situs* of the cattle must be determined upon the facts alleged in the complaint, viz:

"That during the year A. D. 1881, said plaintiff was not the owner of any real estate in said White Pine county; that during said year plaintiff was a resident of Eureka county, state of Nevada, and was the owner of and residing upon a tract of land situated in said Eureka county; that during the years A. D. 1880 and 1881 plaintiff was the owner of a large number of cattle, including the cattle assessed as hereinbefore stated; that the cattle so assessed by defendant, together with a large number of other cattle which were owned by plaintiff, cared for and managed during all the times above mentioned upon plaintiff's said tract of land in said Eureka county, and during the winter months were herded thereon; that said tract of land was at all said times the 'home ranch' of plaintiff for purpose of herding, caring for and managing said cattle; that on or about April 1, 1881, all of the above mentioned cattle were turned out at said ranch in said Eureka county, and from April 1, 1881, to November 1, 1881, or thereabouts, said cattle were permitted to graze upon the public domain in both said Eureka and White Pine counties; that when the cattle * * * were assessed by said defendant they were grazing within the boundaries of said White Pine county, and at various times did so graze between the first Monday in April to the second Monday in September, 1881."

From these averments it appears that plaintiff's cattle were, during the assessing period, "permitted to graze upon the

public domain in both said Eureka and White Pine counties." The mere fact that at the time of the assessment "they were grazing within the boundaries of said White Pine county, and at various times did so graze" during the assessing season, does not necessarily determine that the cattle were within said county for the purpose of taxation. Respondent did not own any real estate in White Pine county. He did own, and reside upon, real estate in Eureka county; where his cattle were cared for and his business conducted. This was his home ranch for the "purpose of herding, caring for and managing said cattle." This was where his cattle belonged. They were not abiding within, nor did they belong in, White Pine county, in such a sense as to become incorporated with the wealth of that county, or to make them a part of its personal property.

The property was, in the eye of the law, within Eureka county for the purpose of taxation, because it belonged there, and it was so situated "as to make it a part of the wealth of that county." (*Conley* v. *Chedic*, 7 Nev. 341.)

These views accord with the general principles announced in many of the decided cases, and are within the meaning, spirit and intent of the revenue laws of this state.

By adhering to this rule the system of taxation of property of this kind is, upon just and equitable principles, made harmonious and certain.

If the rule contended for by appellant is to prevail, the locality where the property would be assessed would depend entirely upon the will of the owner of the property, the vigilance of the assessor or collusion, of both. It would lead to endless confusion and uncertainty, if not to the commission of frauds upon the revenue law.

In *Hays* v. *The Pacific Mail Steamship Company*, the state of California sought to collect a tax levied upon a steamer belonging to defendant and engaged in the business of carrying freight from New York to San Francisco, via Panama. The supreme court of the United States said:

"We are satisfied that the state of California had no jurisdiction over these vessels for the purpose of taxation; they were not properly abiding within its limits, so as to become incorporated with the other personal property of the state;

they were there but temporarily, engaged in lawful trade and commerce, with their *situs* at the home port, where the vessels belonged, and where the owners were liable to be taxed for the capital invested, and where the taxes had been paid." (17 How. 599.)

The same doctrine is announced in *Morgan* v. *Parham*, 16 Wall. 476.

In *St. Louis* v. *The Ferry Company*, the controversy related to taxes imposed by the city of St. Louis upon the ferry-boats used by defendant in conveying freight and passengers across the Mississippi river between the city of St. Louis and the opposite Illinois shore. The court said:

"As the boats were laid up on the Illinois shore when not in use, and the pilots and engineers, who ran them, lived there, that locality, under the circumstances, must be taken to be their home port. They did not so abide within the city as to become incorporated with and form a part of its personal property. Hence they were beyond the jurisdiction of the authorities by which the taxes were assessed, and the validity of the taxes cannot be maintained." (11 Wall. 432.)

The state courts have declared the same principles.

"These boats have no actual location or place of residence, so to speak, in this state; but they have a location and home in the state of New York, and cannot, I think, in any sense be considered as belonging here as the objects of taxation by us." (*State* v. *Haight, supra; Mayor of Mobile* v. *Baldwin,* 57 Ala. 70; *People* v. *Niles, supra.*)

In *The State* v. *Falkinburge, supra,* the defendant lived in the county of Cape May, but owned land in Cumberland county. The court held that his cattle were properly assessed in the township of Downe, in Cumberland county, where they "were at the time of the said assessment, and for some time before, actually kept and pastured day and night * * * on his meadow situate and being in the township of Downe." The court could "perceive no reason therefore, why the owner of cattle, with which grazing lands are stocked, should not be taxed where the owner's profits on those cattle is made or accrues."

The principles announced in the authorities cited sustain the

action of the district court in overruling the demurrer; not
upon the legal fiction that personal property follows the resi-
dence of the owner, but upon the fact that the *situs* of the
cattle, under the averments in the complaint, was at the home
ranch in Eureka county, where they actually belonged, for the
purpose of taxation.

In my opinion the judgment of the district court should be
affirmed.

It is so ordered.

LEONARD, J., dissenting:

"It is admitted," says the court below in its opinion, "that
between April 1 and November 1, 1881, these cattle were
grazing at will upon the public domain in White Pine county."

It is true that it is alleged in the complaint that the eleven
hundred head in question, and a large number of other cattle
belonging to plaintiff, on or about April 1, 1881, were turned
out at his ranch in Eureka county, and were permitted to
graze in both Eureka and White Pine counties from April 1
to November 1, 1881; and that when the eleven hundred head
were assessed in White Pine county by defendant, they were
grazing within the last named county, and at various times
did so graze during the assessment season.

It is not alleged in the complaint what portion of the time
the cattle in question grazed in Eureka county, if at all; and
construing the allegations of the complaint most strongly
against the plaintiff, or, at least, giving him the benefit of
facts only which he alleges, it cannot be said there is any alle-
gation that the eleven hundred head were grazing in Eureka
county during any portion of the time from April 1 to Novem-
ber 1, 1881. An allegation that all of plaintiff's cattle were
*permitted* to graze in both Eureka and White Pine counties is
not an allegation that the cattle in question did, in fact, graze
in Eureka county any part of the time. The plaintiffs home
ranch and his domicile were in Eureka county, where all his
cattle were herded during the Winter months—say from
November 1 to April 1.

It is alleged that the cattle in question were cared for and
managed at all times from the home ranch, although it is diffi-

cult to see that, after being turned out in the spring and per-
mitted to go into White Pine county, they were· managed or
cared for to any considerable extent, if they were allowed to
"roam at will" until winter.

The court below held that they did not belong in White
Pine county for the purposes of taxation; that they "ranged
alone, unincorporated with the other property of that county,
and constituted no part of the wealth thereof."

The court did not hold in terms that the *situs* of this prop-
erty was necessarily at the domicile of its owner, but the
decision was evidently affected, if not controlled, by that fiction
of law.

I quote from the opinion:  *  *  *  "I do not doubt, how-
ever, that while plaintiff may have resided in, or, in addition,
owned large landed interests in Eureka county, yet had always,
or even during the entire year, perhaps, kept and herded
these cattle in White Pine county, and managed and con-
trolled them exclusively in that county, but that they would
have been legally· taxable there; such is not this case.  *  *
*  The condition of this state is such ·that stock grazing in
large herds must, necessarily, often change their location,
either on account of the scarcity of herbage at all seasons, or
owing to the difficulty of obtaining it during the winter sea-
son in places where feed in the summer may be abundant.
This fact lends force to the rule, applying it to stock in this
state, that, in general, personal property follows the person of
the owner, and in all such instances as in the case at bar, must·
be confined to the person of the owner, or great confusion and
hardship will ensue.  This view is sustained in *People* v.
*Whartenby*, 38 Cal. 466.  (*People* v. *Niles*, 35 Cal. 282;
*Oakland* v. *Whipple*, 39 Cal. 115; *Hays* v. *Pacific M. S.
Co.*, 17 How. 597.)

It is not. for the courts to say what rule or system of assess-
ment and taxation *ought* to be adopted.  Their only duty is
to ascertain and declare the legislative will, whatever it may
be.  (*St. Louis* v. *The Ferry Co.*, 11 Wall. 429.)

No warrant can be found in our statute for applying to live
stock the fiction of law that personal property has no *situs*
away ·from the person or residence of its owner, unless it

should be so applied to all other personal estate, except " money, gold dust, gold and silver bars and bullion." (Sec. 3132, C. L.)

It was the duty of defendant, to assess "all property in his county, real and personal, subject to taxation." (Comp. L. 3130, as amended, Stat. 1881, p. 64.)

This property is admitted to have been subject to taxation, and the only question, therefore, that requires consideration is, whether, in the sense of the statute, for the purposes of taxation, it was in White Pine county when assessed by defendant.

Section 3128, Comp. L., provides that "all property of every kind whatsoever, within this state, shall be subject to taxation," with certain exceptions not affecting this case.

Section 6 of the revenue law (Comp. L. 3130), as amended (Stat. 1881, p. 64), makes it the duty of each county assessor, between the first Monday in April and the second Monday in September, to ascertain, by diligent inquiry and examination, all property in his county, real and personal, subject to taxation, and the names of all persons, corporations, associations, companies or firms, claiming or having possession, charge or control thereof. To enable him to make the required assessment, it is made his duty to demand from each person or firm, etc., within his county, a statement, under oath, of all real estate or personal property, within his county, owned, claimed by, or on deposit with, or in the possession or control of, such person or firm, etc.; and the president, cashier, treasurer, managing agent or superintendent of any corporation, association, etc., must furnish the assessor a complete description of all money, jewelry, bonds or other personal property, which may be on *special* deposit with such corporation, bank, association or firm.

If the owner of any property, not listed by another, shall be absent or unknown, the assessor shall estimate its value to the owner, if known; otherwise, to an unknown owner.

By section 3131 the assessor is made liable for the taxes on all taxable property within his county, which is not assessed through his willful neglect.

Section 3132 provides that, at the same time and in the

same manner that other lists of property are by statute required to be given, each person shall deliver to the assessor a similar list of all real estate and personal property which he owns, claims or has the charge, possession or control of, in any other county of the state, which he does not, of his own knowledge, know has been assessed in such county, for that year, which list shall describe each tract of land, and all vessels and other water craft, and specify each and all deposits, if any, and the persons with whom such deposit is made, and the place in which it may be found, unless he shall have included all such money, gold dust, gold and silver bars and bullion, in the list of property in his county, which it is made lawful to do; and he shall also specify the kind and nature of all other personal property in such county belonging to him, or under his charge, possession or control.

Section 3133 makes it the duty of every assessor, as soon as he receives a list of property in another county, to make out therefrom a list for each county in which such taxable property may be, and transmit the same to the assessor of the proper county, who shall assess the same as other taxable property therein, if it has not been before assessed for the same year.

Section 3134 declares that property of every firm, incorporated company or association, shall be taxed in the county where the property is situated; and whenever any portion of the property of any such company, etc., shall be assessed and taxed in the county wherein it is located, then, upon presentation at the principal office of such company or association of a receipt of the collector of said county, that such taxes have been paid in another county, the same shall be deducted, at the principal office, from the aggregate amount of taxes imposed upon, or paid by, said company, for the same property, in the county wherein the principal office of such company is situated.

Section 3136 makes it the duty of each assessor to prepare an assessment roll, in which shall be listed all the real estate, improvements on real estate, including improvements on public lands, and other personal property, within the limits of the county.

From the above provisions, as was said in *People* v. *Niles*, 35 Cal. 286, the intent is clear to render all personal property taxable in the county in which it is situated, between the first Monday in April and the second Monday in September of each year, except money, gold dust, gold and silver bars and bullion, which may, at the option of the owner, be taxed in the county in which he resides; and it follows therefrom that personal property, with the exceptions just stated, for all purposes of taxation is to be considered, like real estate, as having a *situs* of its own, independent of the domicile of its owner. (See, also, *Hoyt* v. *Commissioners of Taxes*, 23 N. Y. 224; *People* v. *Home Ins. Co.*, 29 Cal. 533.)

Tangible personal property of a resident of this state (except gold dust, etc.) which, in the sense of the statute, is within another state or county, cannot be assessed to the owner in the county where he resides; and such property of a non-resident is assessable in the county where it is situated.

But it is claimed by plaintiff that, for the purposes of taxation, the *situs* of these cattle was in Eureka county, because the home ranch was in that county, or because the owner resided there and managed his business there, or for both reasons.

It was said by this court in *Conley* v. *Chedic*, 7 Nev. 341, that " the statute requires or authorizes the assessment of all property in the county during a certain time in each year. Now, what property is to be understood as being in the county ? Can it be said that such as is simply passing through it for the purpose of finding a market elsewhere, or is destined for some other county in this state, is property in the county for the purposes of taxation ? Certainly not. To constitute it property for that purpose, in any particular county, it must be in such a situation as to make it a part of the wealth of that county."

There can be no doubt about the correctness of that decision. The same substantially was said in *Hays* v. *Pacific M. S. Co.*, 17 How. 599; in *People* v. *Niles, supra*, and in *City of Oakland* v. *Whipple*, 39 Cal. 115.

But the language of courts must be construed according to the facts of the case under consideration.

In Conley's case the facts were that the plaintiff owned certain cordwood and lumber that had been cut in California, thrown into Carson river, and driven through Douglas county into Ormsby county. While passing through the former county the property was assessed for the year 1870, and the taxes paid. After it came into Ormsby county it was there assessed. Plaintiff refused to pay the tax, and the assessor seized and sold a portion of the wood to pay the tax. Plaintiff brought an action to recover one thousand dollars damages, and defendant, the assessor of Ormsby county, recovered judgment. In this court the judgment of the lower court was affirmed, on the ground that the property was not assessable in Douglas county, and that it was lawfully assessed in Ormsby county.

The jury found as facts that plaintiff was not a resident of the state when the assessment was made in Douglas county, and that the property was simply *in transitu* to the town of Empire, in Ormsby county.

This court said it was not taxable in Douglas county, because it was not property belonging within its limits so as to become incorporated with the other property of the county, but only temporarily therein, while being transported to its final destination in the county of Ormsby.

But, for the purposes of taxation, under what circumstances can it be said that personal property belongs within a state or county so as to become incorporated with other property therein?

In *People* v. *Niles, supra,* under a statute like ours, the court said: "To authorize the taxing of personal property in any other county than that in which the owner resides, it must appear that the property is being to some extent kept or maintained in such county, and not there casually, or *in transitu,* or temporarily, in the ordinary course of business or commerce. If A, a resident of San Francisco, has cattle and sheep, which he keeps or herds or pastures in San Mateo county, and has them there for that purpose on the first of March, or at a subsequent time between that day and the first Monday in

August, they are taxable in San Mateo county, unless they have been brought there at some time subsequent to the first Monday in March and have been already assessed in the county from which they were brought."

In *City of Oakland* v. *Whipple, supra,* the defendant was a resident of San Mateo county, but he was assessed for a steamboat in Oakland, Alameda county. The boat was enrolled in San Francisco, but at the time of its assessment, and during the month of May of that year, it was lying at anchor in San Antonio creek, within the corporate limits of Oakland. Said the court:

"The findings do not disclose whether the boat was there only temporarily in the prosecution of a voyage; or for what purpose. If it had appeared that she was only *in transitu* or there for a mere temporary commercial purpose, the case would come fully within the principles announced in *People* v. *Niles,* 35 Cal. 282, in which we held that personal property thus transiently within the county could not be there taxed, but should be taxed in the county in which the owner resided. But in the absence of an express finding on that point we must presume the implied findings to have been such as were necessary to sustain the judgment, and that the court found the boat was not *in transitu,* or there for a mere temporary purpose, and was consequently subject to taxation, and rightfully taxed."

In *People* v. *Holladay et al.*, 25 Cal. 306, the property upon which the taxes were assessed consisted of cattle.

On the first Monday in March they were in Solano county. Between that time and the month of May following, they were removed to Alameda county, where they were assessed and the taxes paid. Appellants claimed they ought not to pay the taxes assessed in Solano county, for, if so, they would have to pay twice on the same property. In the language of the court: "Of course the law does not exact double taxation. It is the duty of the assessor to assess all taxable property in his county between the first Monday of March and August in each year. All property which is within his county on the first Monday in March is assessable in his county, provided it is in his county at the time the assessment is made, and the taxes

thereon are payable in his county. But if the property is removed from his county to another before the assessment is actually made, he cannot make an assessment which will be payable in his own county.   *   *   *

The taxes are due and payable in the county where the property was first assessed, and if the property, after it has been assessed, be removed into another county and there assessed, the first assessment is unaffected thereby, and a pay-. ment of the latter assessment is not a discharge of the former. In other words, the first assessment, if the property was in the county at its date, is the lawful one as between the two,. and if the taxes be paid upon the latter assessment, it is a mere voluntary payment, and is no answer to a demand for payment upon the first. Hence, if the cattle in question were in Solano county at the date of the assessment made by the assessor of that county, the taxes were legally due in that, county, and a payment of taxes, subsequently assessed upon them in Alameda county was no discharge of the debt, but a. mere voluntary payment. It was the business of the appellants to know whether their cattle had been assessed in Solano county before their removal; and if so, such assessment and payment thereon would have been a complete answer to the claim of Alameda county."

It should be borne in mind that in the case in hand the assessor of Eureka county did not assess the property in question until after they were in White Pine county, and consequently assessable there, if in the statutory sense they were within that county.

In *State* v. *Falkinburge*, 3 Green, N. J. 322, certiorari was by the supreme court directed to the commissioners of appeal in cases of taxation, in the township of Downe, Cumberland county. In their return the commissioners certified, among other things, that Falkinburge was assessed for the state, county and township taxes in the township of Downe, for the year 1834, the sum of forty-five dollars; that said sum was made up by an assessment on land situate in Downe, the sum of twenty-one dollars, and an assessment on ninety-nine neat cattle, at twenty-five cents each, twenty-four dollars and seventy-five cents.

One of the grounds of appeal having been that the cattle were not assessable in the township of Downe, Falkinburge not residing there, the commissioners said: "It was well known to us that Falkinburge had not, at any time, resided in Downe, but resided in Cape May at the time of the assessment, and for a long time before and since; but it appearing to us that the land was justly assessed, and was not relatively too high, and that the cattle of said Falkinburge, to the number of ninety-nine, above the age of three years, were, at the time of said assessment, and for some time before, actually kept and pastured, day and night, by said Falkinburge, on his meadow situate and being in the town of Downe; and it appearing to us that the said Falkinburge was not taxed for the said cattle in the township in which he resides, in the county of Cape May, we did, after due examination and consideration, give judgment against said Falkinburge, the appellant, and confirm the assessment."

The statute then in force directed the assessor to make an exact list, yearly, of all "the lands and chattels in his township ratable by law."

The court said: "The defendant who prosecutes this writ lives in Cape May, but owns land in Cumberland, on which he grazes cattle. At the time of the annual assessment, in 1834, and for some time before, he had feeding on these lands ninety-nine cattle subject to taxation. * * *

The principal point sought to be settled is, whether these cattle are liable to be taxed out of the township where the owner has his domicile. * * *

The truth is that personal, as well as real estate, has a locality, although not so permanent, nor always ascertained with so much certainty. * * *

A man's personal property, his choses in action, his trade and business, need and receive the protection of the laws of that country where they are situate, accruing or carried on. They have all the benefits resulting from the society in whose midst they are, without regard to the owner's residence. They should, therefore, pay their part of the expense of maintaining and administering those laws and supporting that society. It seems self-evident that if an inhabitant of

Philadelphia thinks proper to own land and carry on the busi-
ness of grazier in New Jersey, all the capital invested in that
business, whether in lands or cattle, should assist to bear the
expenses of those institutions by which the owner's property
is protected.   *   *   *

If I am correct in this principle, as applied to states or
nations, it seems equally to extend to the subdivisions of any
particular state.   These subdivisions may have, and in our
state actually have, their peculiar. burdens and expenses,
advantages or disadvantages.   I can perceive no reason, there-
fore, why the owner of cattle with which grazing lands are
stocked should not be taxed where the owner's profit on those
cattle is made or accrues, just as a tannery or store is assessed:
as such, independent of the tax on the lands."

In *Rieman et al.* v. *The Treasurer of Vigo County*, 27.
Ind. 289, the appellants were provision dealers in, and resi-.
dents of, Baltimore, Maryland, and doing their entire business
there, except that they had a packing house in Terre Haute,
Indiana, and were in the habit, during December, January
and February of each year, of purchasing, slaughtering and:
packing hogs at their packing house, for shipment from Indi-
ana, and sale in their business in Baltimore.   The purchase
money was procured from their house in Baltimore, and all
their capital and personal property, including stock in trade,
was there taxed under the generic name of personal property,
and the taxes paid.

The court said: " In the case under consideration the prop-
erty was not in transit through the county of Vigo.   It was
brought there, not for immediate shipment, but that money,
labor and skill might there be expended upon it, to enhance
its value, and change its condition as a merchantable com-
modity.   While there, and undergoing this change in its con-
dition, it, as property, had a *situs* within the state, and was
under the protection of its laws."

I quote also from *Powell et al.* v. *The City of Madison*, 21.
Ind. 340, wherein the facts were, in the main, similar to those
in Rieman's case, just referred to.   " But it is urged that, as
the property was only in the city and in the possession of the
plaintiffs for a temporary purpose, it does not come within the

law providing for taxation. It may be true that, in many cases—as, for instance, if an engine owned by a person residing elsewhere should be sent into the city for repairs, or if a horse should be left by a farmer with a farrier in the city to be treated—a mere temporary possession by a person within the city would not be regarded as a possession within the meaning of the law of taxation. But where the possession is of so permanent a character and for so material a purpose as is involved in the slaughtering of hogs, salting and curing the meat, and holding the same until the owners order it shipped, or require a delivery to them, such possession, it seems to us, comes within the spirit and meaning of the law. We conclude the property was taxable."

From the foregoing I think it cannot be doubted that all property in the state, between the dates mentioned in the statute, unless specially excepted by law, or unless it is here for a mere temporary purpose, is subject to taxation, and that it is taxable in the county where it is situated. The place of taxation is governed solely by the local situation of the property.

Suppose, just before the first of April, 1881, a resident of California had driven or shipped one thousand one hundred head of cattle to Eureka county, with the intention of letting them graze somewhere in the state, during the summer and fall, but to be taken back to that state before winter; that, upon arriving at Eureka, after conversing with the plaintiff, he turned his cattle out with the latter's one thousand one hundred head, and let them go into White Pine county to remain until winter. Undoubtedly his cattle would have been subject to taxation in White Pine county, regardless of his domicile in another state, or the location of his home ranch. They would have been assessable whether herded or allowed to roam at will, for, in either case, their actual *situs* would have been in White Pine county at the time of the assessment.

If I am right in this, how can it be said that plaintiff's cattle were not assessable there? The two herds go into White Pine county at the same time, for the same purpose, to remain during the same period; and both are to be taken away before winter; one to the home ranch in California, the other to the home ranch in Eureka county.

Opinion of Leonard, J., dissenting.

If the California cattle would have been within White Pine county for the purposes of taxation, plaintiff's must have been there also. Under the statute, the *situs* of property owned by residents and non-residents is fixed by the same provisions and found by the same rules.

Nor can it be said that the cattle in question were only temporarily in White Pine county. They were permitted to go there and remain during the entire period allowed for assessing property, and more; and the result is the same as though they had been driven there and herded. For the purpose of gain to plaintiff they were separated from the body of cattle in Eureka county as much as they would have been if they had been shipped to California or New York, for the same period and for the same object. They were actually out of one county and in another, and all the time had a *situs* of their own.

A merchant has a store, and resides, in Carson. There is opportunity to sell goods at Lake Tahoe, in Douglas county, during the summer, but not in the winter. Before he is assessed in Ormsby county, he takes goods to the lake from the home store in Carson, intending to close his business there after the summer trade. He manages the lake store from his home store. There can be no doubt that the goods actually in Douglas, at the time of the assessment, would be taxable there. In the sense of the statute they would not be temporarily there. They would be incorporated with the other property of the county and become a part of its wealth.

The situation of property during the assessing season fixes the place of assessment. Its whereabouts during the balance of the year does not necessarily affect that question. If, after the second Monday in August, 1881, plaintiff had driven these cattle into Lincoln county, or permitted them to go and remain there until the last of March, 1882, they would not have been assessable in Lincoln county either for the year 1881 or 1882. In assessing them in 1882, the assessor did not inquire where they were during the winter of 1881, or where they would be in the winter of 1882. His only question was, where are they now, in the sense of the statute, for the purpose of taxation?

There is no more reason for holding that cattle actually

within a county are not there in a legal sense, for the purposes of taxation, because the home ranch is in another county, than there is in holding that, although actually within that county, they are not there for the same purpose, because the domicile of the owner is somewhere else. If our statute is in conflict with one of these fictions there is no room for the other.

If the legislature desired to provide a different system of assessment and taxation as to live stock from that adopted in relation to other personal property, it would have been an easy matter to have indicated the difference. In the absence of any intimation to that effect, and in the presence of a statute commanding assessors to be guided by the same rules as to all property, with the one exception stated, courts should, in my opinion, construe laws as they find them, and leave it to the legislative branch of the government to make such changes as circumstances and conditions demand.

In my opinion the cattle in question were assessable in White Pine county for the year 1881, and not in Eureka county. I therefore dissent from the opinion of the court.