**EHRET et al. v. PRICE.**

No. 14678—Opinion Filed Jan. 25, 1927.

Rehearing Denied April 5, 1927.

(Syllabus.)

1. **Appeal and Error—Review—Finding of Ownership of Corporate Bonds in Action to Foreclose Mortgage Lien.**

The finding of fact by the trial court that plaintiff in an action for foreclosure of mortgage lien on corporate bonds was the owner and holder of such bonds at time of suit and had purchased same in good faith, without notice of any defense, such finding not being against the clear weight of the evidence, will not be disturbed.

2. **Corporations — Issuance of Mortgage Bonds—Lien on After-Acquired Real Estate at the Time Held Under Contracts for Deed.**

Where a resolution passed by the board of directors of a corporation authorizes the president and secretary thereof to issue bonds in the name of the corporation, and to negotiate sale of same on the most favorable terms obtainable, and to secure the payment of same by executing a mortgage lien on all property of the corporation, both personal and real, where such corporation owns contracts for deeds to such real estate, and owns no other real estate except such contracts for deed, such resolution contemplates and includes authority of the designated officers of the corporation to mortgage the real estate covered by such contracts for deed although the legal title be thereafter acquired.

3. **Same—Ratification of Mortgage by Corporation's Recognition of Validity.**

The execution of a mortgage on the property of a corporation by its officers, though done without previous authority to do so, may be impliedly ratified and confirmed by the payment of interest on the bonds and by other acts showing a clear recognition of the mortgage by the corporation.

4. **Same—Validity of Mortgage on After-Acquired Property.**

"A valid mortgage may be made of property not in existence at the date of the mortgage so as to operate and attach upon it so soon as it comes into existence, and make it effective security for the debt provided in the mortgage," and the rule extends to corporations the same as to individuals.

5. **Same—Sufficiency of Description—Notice Putting Upon Inquiry.**

The office of a description in an instrument of conveyance is not to identify the property conveyed, but to furnish a means of identification.

A description, however general and indefinite, if sufficient upon the face to cause a reasonably prudent person to investigate, and if by extrinsic evidence on investigation, it can be made practically certain what property the instrument was intended to cover, will be sufficient to sustain the lien.

6. **Same—Registration as Constructive Notice.**

The proper registration of a conveyance operates as constructive notice to all subsequent purchasers and is as effectual in law as personal notice.

Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself.

7. **Corporations—Foreign Corporation Doing Business in Oklahoma Territory—Validity of Organization After Proclamation Opening Territory.**

A corporation duly organized under the laws of another state, after the issuance of the proclamation opening Oklahoma Territory to settlement, but prior to the organization of same into territorial government, for the purpose of doing business in such parent state and also Oklahoma Territory, the same being valid under the laws of the parent state, was valid in Oklahoma Territory.

8. **Limitation of Actions—Suit on Corporate Bonds and Matured Coupons.**

The plea of the statute of limitations, in an action upon corporate bonds and matured coupons, is not good as against such matured coupons, where it would not be a good defense to the bonds themselves.

9. **Public Lands—Settlers on Town Sites in Oklahoma Territory—Right of Contract to Convey for Rights of Way, etc., for Public Purposes.**

Upon the opening of Oklahoma Territory to settlement, settlers upon lands duly mapped and platted for town-site purposes were not forbidden by law to contract for conveyance of title to such land for the purpose of rights of way, franchises, etc., for public purposes.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by Anna W. Price against Com Ehret and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Everest, Vaught & Brewer, G. A. Paul, Geo. J. Eacock, Cottingham, McInnis & Green, and Stuart, Sharp & Cruce, for plaintiffs in error.

Wm. P. Harper, for defendant in error.

HARRISON, J. This was an action against the Oklahoma City Ditch & Water Power Company, a corporation, and other

defendants, by Anna W. Price, to recover on certain corporate bonds of said Ditch & Power Company and to foreclose a mortgage lien, given to secure payment of said bonds on certain lots in Oklahoma City. Said corporation had issued its bonds, 50 in number, each of the face value of $500, aggregating the sum of $25,000, and had executed a trust deed to one Joseph S. Chick, as trustee, which contained a mortgage clause, to secure the payment of such bonds. Plaintiff, Anna W. Price, claimed to have purchased eleven of such bonds, that same were past due and unpaid, and that she was the owner and holder of same at the time this action was begun.

The facts leading up to this suit, as found by the trial court, are that upon the issuance of the proclamation opening Oklahoma to settlement, in April, 1889, the lands, which now constitute the south portion of Oklahoma City, and lying along the north side of the North Canadian river, were settled upon by emigrants, and later in the year 1889 some of said lands, including the lands involved, were platted into lots and blocks for city purposes, and designated as South Oklahoma addition to Oklahoma City, and thereafter a provisional city government was organized. Subsequently, in September, 1889, J. B. Weaver, C. W. Price, C. P. Walker, and others organized the defendant corporation, viz., the Oklahoma City Ditch & Water Power Company, under and in compliance with the laws of the state of Colorado. and procured a charter from said state; one of the purposes of which was to construct and operate ditches in Colorado and Oklahoma for water power and irrigation purposes. C. W. Price, C. P. Walker, and Robert Kincaid, respectively, were elected president, secretary, and treasurer of the corporation.

After the organization of said corporation, it procured assignments to it of certain contracts for deeds, grants of rights of way and franchises, which had theretofore been obtained by other persons from settlers upon the lands and from the said provisional city government, and thereupon began the construction of a ditch from a point on the north side of the North Canadian river something like six miles west of Oklahoma City, extending eastward, down through and across the lands between such point and a point east of the Santa Fe railroad track to the intersection of said river, crossing and including the lots and blocks alleged to have been covered by the contract for deeds, franchises, etc., above

mentioned, and by the mortgage lien herein sought to be foreclosed.

Thereafter, in November, 1889, said corporation issued the bonds and executed the deed of trust above mentioned, which purported to include all the property then owned by said corporation, together with all property which might thereafter be acquired by such corporation. Said deed of trust was recorded in the office of the register of deeds of Oklahoma county, Oklahoma Territory, June 27, 1890.

Each bond recites on its face that if default in payment of installments of interest be made for more than 60 days after same becomes due, the principal of the bond shall become due and payable in the manner provided for in the deed of trust; and the further recital, to wit:

"This bond is one of a series of first mortgage bonds of fifty of like tenor, amount and date * * * the aggregate sum being $25,000, the payment of the principal and interest of which is secured by a first mortgage or deed of trust of even date herewith made by the Oklahoma City Ditch & Water Power Company to Jos. S. Chick, * * * as trustee, upon his refusal or inability to act, then the sheriff of Arapaho county (Col.) together with the rights and franchises belonging to said company under its charter and under the ordinances of Oklahoma City, Indian Territory, and including all such as may hereafter be acquired by said company."

The deed of trust contains the following, to wit:

"Said company * * * does hereby grant * * * unto the said party of the second part in trust forever all of the following property now owned by the said company, consisting in part of a canal near Oklahoma City, Oklahoma Territory, situated upon and constructed across the real estate, described in Exhibit 'A', which is hereto attached and made a part of this trust deed; the said canal being about six miles in length, constructed by said company for manufacturing and other purposes, together with the flumes, dams, bulkheads, tail races, water wears, piling, water power, right of way and all and every description of property constituting a part of the said canal and necessary to its use and operation and all other property whether real or personal, now owned, or which may hereafter be owned by said company, together with the franchises belonging to said company under its charter and under the ordinances of Oklahoma City and South Oklahoma, I. T., and including all such as may hereafter be acquired by said company. * * *"

The exhibit "A", referred to in the above granting clause as being attached to said

made part of the mortgage, was a map consisting of lines showing the meanderings and course of the river and the course of the ditch and the various tracts of land which it crossed.

The foregoing facts are mentioned in order to dispose of the contention made by plaintiffs in error that said exhibit "A." is the only description which said mortgage attempted to give of the lands claimed to be covered by such mortgage, and that such description, though of record, is not sufficient to give subsequent purchasers of such lands notice of the existing mortgage on same.

After the issuance of said bonds and the execution of said deed of trust to secure the payment of same, the said Ditch & Water Power Company, by virtue of the aforesaid contracts for deeds to right of way, franchises, etc., constructed the ditch in question and began operation thereof, at least to the extent of furnishing power to a flour mill and light plant and probably to other enterprises. Subsequent thereto, the Ditch & Water Power Company obtained title through deeds of conveyance and grants of right of way and franchises from the town-site trustees of Oklahoma City to the lots involved in this controversy, the same being more fully described in the records of the trial court. The lots, title to which was thus acquired, constitute "the after acquired property" referred to in the mortgage; that is, the legal title acquired after the execution of the mortgage given upon all the property the corporation then owned, and all property thereafter acquired.

Anna W. Price claimed the right to foreclose on the lots in question by virtue of the provision in the mortgage conveying all property which might thereafter be acquired by the corporation.

Thereafter, for reasons immaterial to a determination of the rights of the parties to this controversy, the lots here involved were conveyed by the Ditch & Water Power Company through its designated trustee to one Henry Overholser as trustee. All these various conveyances were duly recorded, and all the defendants below, who are resisting and contesting the right of Anna W. Price to foreclose the above-mentioned mortgage lien against the lots in question, obtained their title through Henry Overholser as such trustee. The title of defendants to the lots in question came through the deeds of conveyance from the town-site trustees of Oklahoma City to said Ditch & Water Power Company, thence

through C. P. Walker, trustee, to Henry Overholser, trustee, all of which transfers were of record at the time defendants obtained deeds from Overholser.

The court rendered judgment in favor of Anna W. Price for the face value of the bonds and interest thereon to date of judgment, and decreed a foreclosure of the trust deed or mortgage lien in question, and ordered sale of the lands in question to satisfy the judgment. Con Ehret and others appeal to this court for a reversal of such judgment.

The first contention made by plaintiffs in error is that the court erred in finding under the evidence that Anna W. Price was the owner and holder of the bonds sued upon at the time this suit was brought. There was positive testimony that she had purchased the bonds in question in due course for a valuable consideration, that such bonds had never been canceled or paid, that she was the owner and holder of same at the time this suit was brought, and there was no positive testimony to the contrary. In our opinion, the finding of the trial court in this regard is not against the clear weight of the evidence, and such finding will not be disturbed.

The second proposition argued is that the president and secretary of the Ditch & Water Power Company were without authority from the board of directors of said corporation to execute the mortgage lien herein sued upon.

The authority of the president and secretary to issue the bonds in question and to execute a deed of trust to secure the payment of same was given by a resolution passed by the board of directors at a meeting held in its office in Oklahoma City, October 1, 1889, at which, as appears from the records of the corporation, a majority of the board of directors and a majority of the stockholders were present. The resolution, which was unanimously adopted by all present, contains the following:

"On motion of Frank A. Weamer the president and secretary was authorized to issue bonds of the company to the amount of twenty-five thousand ($25,000.00) dollars in denominations of five hundred ($500.00) dollars each, said bonds to bear interest at the rate of six per cent. per annum payable semi-annually on the first day of May and November of each year, said bonds to become due and payable in twenty years from the date thereof with the privilege of paying any or all of said bonds at the time of any semi-annual payment of interest after the expiration of five years from the

date of said bonds, and to secure the payment of said bonds by giving the first lien on all the property of said company both real and personal and to negotiate the sale of the same on the most favorable terms obtainable, but at not less than eighty cents on the dollar of their face value."

The above resolution was signed by six members of the board of directors, including the president and secretary, and duly attested under the seal of the corporation by the secretary, and was recorded in June, 1890, in the office of the register of deeds. While the resolution does not in so many words say, "The president and secretary are hereby authorized to mortgage all property now owned and hereafter to be acquired by this corporation." yet it does authorize the president and secretary to issue bonds to the amount of $25,000, in denomination of $500 each, bearing interest at the rate of 6 per cent. per annum, payable semi-annually, on a specified date, reserving the privilege of paying any or all of same on date of any semi-annual payment, after five years from date of bonds, and expressly authorizes the president and secretary to negotiate the sale of same on the most favorable terms obtainable, and to secure the payment of same by a first mortgage lien on all property owned by the company, both personal and real. At that time, so far as the record discloses, the company owned no interest in any real estate whatsoever, excepting the aforesaid contracts for title, and for grants of right of way and franchises. These muniments were then owned by the company, considered as assets of the company and valued as interests in the real estate which they purported to cover, and to which they fully expected to obtain clear legal title, hence such real estate was for the purpose of securing payment of the company's bonds, considered as much the property of the company as though complete title had already been obtained. Therefore authority to mortgage same was clearly contemplated and included within the foregoing resolution, and the acts and conduct of the directors and stockholders of the company thereafter conclusively shows this fact.

Besides, if there were a doubt as to the authority of the president and secretary, and in our opinion there could be no reasonable doubt, the company received and accepted the benefits of such mortgage in the proceeds of the sale of the bonds, and made no complaint nor raised any question as to the authority of the president and secretary but in every way recognized the valid force of the mortgage, paying the interest coupons as they fell due, thereby acquiescing in and ratifying the acts of the president and secretary.

The execution of a mortgage on the property of a corporation by the officers thereof, though done without previous authority to do so, may be impliedly ratified and confirmed by the payment of interest on the bonds and by other acts showing a clear recognition of the mortgage by the corporation. C, S. 1921, sec. 5247. See Jones on Corporate Bonds & Mortgages (2d Ed.) 49; 3 Thompson on Corporations (2d Ed.) par. 2561, also par. 2568, Id.

Plaintiffs in error contend also that, though the officers in question may have had express authority to execute the mortgage, still the corporation itself could not legally mortgage property thereafter to be acquired. This contention cannot be sustained, for though the property came strictly within the term "after acquired property" (and it clearly does not), still the recognized rule is that—

"A valid mortgage may be made of property not in existence at the date of the mortgage so as to operate and attach upon it so soon as it comes into existence, and make it effective security for the debt provided in the mortgage." 15 Am. & Eng. Ency. Law (1st Ed.) 749.

And a corporation which has general power to mortgage its property, in the absence of any prohibition, has power to mortgage any property to be thereafter acquired, in the same manner as a natural person. 3 Thompson on Corporations (2d Ed.) 2545; Jones on Corporate Bonds & Mortgages, par. 94; Holroyd v. Marshall, 10 H. L. 191; 10 Cyc. 1102.

It is further contended that the description was not sufficiently definite to identify the land. This contention cannot be sustained.

"The office of a description is not to identify the property conveyed, but to furnish means of identification." Thompson v. Madison, etc. (Ind.) 2 N. E. 735; Doom v. Holmes, 58 Ga. 178; Stater v. Breese, 36 Mich. 77; Albertson v. Prewitt (Ky.) 49 S. W. 196.

"A description, however general and indefinite it may be, if by extrinsic evidence it can be made practically certain what property it was intended to cover, will be sufficient to sustain the lien." Jones on Mortgages (6th Ed.) par. 65; Am. & Eng. Ency. Law (2d Ed.) p. 296; Toledo, etc, Co. v. Hamilton, 134 U. S. 296.

The mortgage herein not only covers the identical land owned by the company, and

conveyed by the company, by the company's trustee, C. P. Walker, to Henry Overholser, and by Henry Overholser, trustee, to the plaintiffs in error, but by the tracings shown in the exhibit "A," heretofore mentioned, it definitely points out the identical lands owned by the company, and embraced in the deeds of plaintiffs in error, and thereby affords a means of certain identification.

It is contended also that the mortgage in question was not such in law as to be entitled to be recorded, citing authorities. These authorities, however, are not controlling in the peculiar circumstances of this case.

The Organic Act of the Territory of Oklahoma was passed May 22, 1890, and put in force the statutes of Nebraska relating to real estate. The pertinent portions of chapter 73, Rev. Laws Nebraska, 1881, which was thus put in force are:

"The term 'deed', as used in this chapter, shall be construed to embrace every instrument in writing by which any real estate, or interest therein is created, aliened, mortgaged or assigned, or by which the title to any real estate may be affected in law or equity, except last wills, and leases for one year or less time."

Sec. 51. "When a deed purports to convey a greater interest than the grantor was at the time possessed of, any after acquired interest of such grantor to the extent of that which the deed purports to convey, shall accrue to the benefit of the grantee."

Sec. 18. "Deeds and other instruments relating to or affecting the title to real estate in this state, shall be recorded in the county in which such real estate or any part thereof is situated."

Sec. 16. "All deeds, mortgages and other instruments in writing, which are required to be recorded shall take effect and be in force from and after the time of delivering the same to the register of deeds for record, and not before as to all creditors and subsequent purchasers in good faith without notice.* * *"

Sec. 30. "The provisions of this chapter shall apply to the conveyance of all claims and improvements upon the public lands."

Sec. 44. "The term 'real estate', as used in this chapter, shall be construed as coextensive in meaning with 'lands, tenements, and hereditaments', and as embracing all chattels real, except leases for a term not exceeding one year."

And prior to the adoption of such statutes the Supreme Court of Nebraska had held:

'The proper registration of a conveyance operates as constructive notice to all subsequent purchasers, and is as effectual in law as personal notice." 6 Neb. 269.

Hence the mortgage in question constituted constructive notice to subsequent purchasers under the statute then in force. Besides, our statute defining notice was enacted in 1890 and was in force prior to time defendants acquired purported title to the property involved.

The statutes on notice, adopted 1890, have remained in force and without change to the present time.

Compiled Statutes 1921 provide as follows:

Sec. 3537. "Notice is either actual or constructive."

Sec. 3538. "Actual notice consists in express information of a fact."

Sec. 3539. "Constructive notice is notice imputed by the law to a person not having actual notice."

Sec. 3540. "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself."

The mortgage in question, constituting constructive notice as it did under the statutes then in force at the time it was recorded, brings it within the statutes relating to constructive notice now in force, and under the circumstances in this case takes it out of the general rule announced in Central Trust Co. of Illinois v. Minnetonka Lbr. Co., 109 Okla. 51, 229 Pac. 823.

It is also contended, in substance, that the corporation was formed before the organization of the territorial government, and was therefore void.

It must be observed that such corporation was duly chartered under the laws of the state of Colorado, and as a corporation of a foreign state had the same right to engage in business in the territory after the issuance of the proclamation as railroads and other corporations had which had been chartered under the laws of various other states prior to the proclamation.

It is further contended that some of the matured coupons included in the judgment had been barred by the statute of limitations before the action was begun. However, no authorities are cited in support of this contention.

The rule appears to be that (Jones, Corp. Bonds & Mtgs. par. 267):

"The plea of the statute of limitations is not a good defense to an action upon coupons, when it would not be a good defense to the bonds from which they were

cut. They are but repetitions, as respects the interest payable at stated times, of the contract which the bond itself makes on that subject, and are a device for the convenience of the holder in the way of collecting the interest." Clark v. Iowa City, 20 Wall. (U. S.) 583, 588; Lexington v. Butler, 14 Wall. (U. S.) 282; also Jones on Corporate Bonds & Mtgs. par. 235.

It is further contended, in effect, that the contracts between the settlers and the company for title, franchises, etc., were void because forbidden by federal statute, but it will be observed from the record that the contracts in question were between the company and settlers upon land platted for town-site purposes. and not between the company and settlers upon land for homestead purposes, and under the federal statutes settlers upon lands platted for town-site purposes were not forbidden to contract for title. franchises, rights of way, etc., for public improvements, not being restricted to the rigid restrictions to which settlers on lands for homestead purposes were subjected.

These propositions dispose of all the decisive issues involved; at least they necessarily include all the issues presented.

Upon the whole, the findings of fact and conclusions of law by the learned trial court discloses rare pains and deliberation and superior comprehension of the intricate questions involved, and in our opinion should be affirmed. Affirmed.

All the Justices concur.