DAVID D. JACKSON, APPELLANT, *v.* T. R. HARRIS AND JEAN HARRIS, RESPONDENTS.

No. 3462

July 9, 1947. 183 P.2d 161.

340

*Kearney & Adams,* of Reno, for Appellant.

*Andrew L. Haight,* of Fallon, and *Leslie A. Leggett,* of Reno, for Respondents.

## OPINION

By the Court, BADT, J.:

This is an action to quiet title. The parties will be referred to as they appeared in the court below. Plaintiff Harris and wife sued to quiet title to a parcel of land, particularly described by metes and bounds, in Fernley, Lyon County, Nevada, fronting 300 feet on the south side of the Lincoln highway with a depth of 123 feet. They joined as defendants Lyon County and David D. Jackson. Lyon County, by its answer, disclaimed all

right, title, and claim "for the reason that this defendant has divested itself of any interest in or to said property by reason of a certain deed executed in favor of the defendant David D. Jackson under date of December 6, 1944, and recorded in the office of the Lyon County recorder on December 7, 1944. * * *" Jackson answered and claimed title to the parcel by reason of the deed mentioned in Lyon County's disclaimer, alleging that he had purchased from the county for a valuable consideration and that at the time of such purchase Lyon County was sole owner of the premises. (Lyon County had theretofore held the property under statutory delinquent tax deed.) He asked that the title be quieted in him, and that the plaintiffs be barred from asserting any claim thereto.

The case was tried to the district court without a jury. The trial court filed a written opinion and decision in which it held that the tax sale to Lyon County was void by reason of the insufficiency of the description in the assessment of the property to Harris, plaintiff herein and former owner of the property, and that the subsequent sale from Lyon County to Jackson was likewise void because the statutory notice of such sale had not been given and because the affidavits of posting and publication had not been filed and because the proper record book had not been kept and for other failures to comply with statutory requirements, and agreed with the contentions of the plaintiffs claiming "the acts and proceedings of the officers of Lyon County as void and in violation of the due process of law clause of the constitution." Motion for new trial was denied and the court signed findings, conclusions, and judgment in accordance with its said opinion and decision, overruled Jackson's objection to the findings and denied Jackson's motion to adopt contrary findings submitted by him. The trial court found, among other things, that Harris and his wife were the owners of the property, that Jackson's claim was without right, that Jackson's allegations that he had purchased the property from the county and that the

county at such time was and had been the legal owner thereof, were not true, that Jackson did not acquire the premises from the county and that the deed from the county upon which he relied was of no force or effect. Jackson appealed from the judgment, and from the order denying his motion for new trial. The main question out of which this controversy arises is as to the sufficiency of the description in the tax assessment and subsequent proceedings culminating in the tax sale to Lyon County. If the description is determined to be insufficient the further question arises as to whether such defect is cured by the provisions of sec. 6449, N.C.L. Other questions arise, and the same are disposed of later.

On June 3, 1941, M. R. Penrose, sheriff and assessor of Lyon County, assessed the property to plaintiffs, using the following description: "Filling Station Lot, 300 feet, value $450.00, Improvements $150.00." The property was offered for sale September 14, 1942, for failure to pay the taxes. No other bids being made, the county treasurer bid the property in for Lyon County and certificate of sale was delivered and recorded. No redemption having been made, a deed to the county was executed and recorded September 15, 1944, conveying the property, described as follows: "T. R. Harris Filling Station Lot 300 feet $450.00; Imp. $150.00; four gas pumps $400.00; Mach. $50.00." On October 9, 1944, Jackson filed his application with the county commissioners asking that real property owned by the county and described as "A Filling Station Lot, 300 feet, together with improvements thereon, Fernley, Nevada, formerly owned by T. R. Harris" be advertised for sale. The commissioners instructed the clerk to advertise the property as provided by law. The sale was had November 20, 1944, and Jackson bid in the property for $66.57, there being no other bidder. The county commissioners confirmed the sale at their meeting of December 5, 1944, and instructed the clerk to issue deed, describing the property as: "Filling Station Lot in the Town of Fernley, State of Nevada, together with improvements situate

thereon, formerly owned by T. R. Harris." The following day the deed was executed to Jackson in which the property was described as: "Filling Station Lot in the Town of Fernley, County of Lyon, State of Nevada, together with the improvements thereon situate, formerly owned by T. R. Harris." It is conceded that the notice of the last-mentioned sale did not comply with the statutory requirements as to posting.

Respondents contend that the trial court was correct in holding the description to be insufficient to pass the title in the tax sale to the county, and we are inclined to agree with this contention. The arrival at this conclusion has not been made without difficulty. Appellant relies upon sundry general rules as to the degree of certainty required in descriptions appearing in deeds, assessments, contracts, etc., arising in a wide variety of proceedings, including ejectment and quiet title suits where reliance was placed upon tax titles. Such general rules are relied upon as the statement that "the office of a description is not to identify the land, but to furnish the means of identification"; "that that is certain which can be made certain"; that "the designation of the land will be sufficient if it affords the owner a means of identification and does not positively mislead him, or is not calculated to mislead him"; that the description is sufficient "when the owner is enabled to identify the land which is assessed without being misled by the description"; that "minute particularity is not required, any description being sufficient which identifies the particular property so clearly that the owner cannot be misled"; that "if a person of ordinary intelligence and understanding can successfully use the description in an attempt to locate and identify the particular property sought to be conveyed, the description answers its purpose and must be held sufficient"; that the description is sufficient "if by extrinsic evidence it can be made practically certain what property it was intended to cover." These general rules are quoted in some of the texts cited by appellant and mentioned in cases cited by him and in

the cases cited in footnotes supporting the texts. It has been necessary to have recourse to virtually every case thus cited in order to determine their value as authority for the rules thus sought to be applied to the facts in the present case. The surprising result is that the rules of law referred to appear to be much broader in their language than required by the facts in the cases in which they are used.

Before discussing these cases it should be noted that the description used by the assessor in the present case gave the following information: The property was assessed against T. R. Harris. It was in the town of Fernley, Lyon County, Nevada. It was described as filling station lot, 300 feet. Its value was given as $450, and improvements $150. The statement that it is a filling station lot affords meager, if any, substantial identification. But one dimension is furnished, namely, 300 feet. The facts brought out in the case indicate that this was frontage, but it could as well have meant depth. No street, lot, block or alley is indicated. We find no mention of any street or street intersection or any tie to any street intersection. We have simply a lot floating in space within the town of Fernley, and having one dimension of 300 feet. In not a single case in which the description was held sufficient in a tax assessment under any of the rules above quoted did the description approach in meagerness the description here used.

In Humes v. Bernstein, 1882, 72 Ala. 546, the sheriff's deed conveyed certain property as "part of Lot No. 17, fronting Gallatin Street 50 feet, extending eastwardly 73 feet, sold as the property of Isaac Jemison & Co." It was contended that the deed was void for uncertainty in the description of the property intended to be conveyed. It was not a tax sale. The court states quite frankly: "Without extrinsic aid, the dimensions of Lot 17 being given, it certainly is too indefinite." It is to be noted too that this deed gave not only the exact frontage but also the depth of the parcel, and the number of the lot of which it formed a part. The case is not

authority for the sufficiency of the description in the present case. The case is also distinguishable in other important respects.

Appellant relies strongly upon Ontario Land Co. v. Yordy, 212 U.S. 152, 29 S.Ct. 278, 53 L.Ed. 449, Id., 44 Wash. 239, 87 P. 257. Here the property was described as Blocks 352 and 372 in Capital Addition to North Yakima. These blocks were not actually platted as such, but formed a parcel marked on the official plat as reserved, and were identified as the same land. The party attacking the tax deed had actual knowledge of the fact that the reference to the blocks mentioned referred to that part of its property marked reserved, denied the validity of the tax in interviews with two county treasurers, stood quietly by during the tax sale, and with full knowledge permitted the purchaser to make his purchase without protest. These elements deprive the case of any persuasive authority on the present problem.

Ontario Land Co. v. Wilfong, 223 U.S. 543, 32 S.Ct. 328, 56 L.Ed. 544, is virtually the same case.

The description in Green v. Palmer, 68 Cal.App. 393, 229 P. 876, 878, exactly defined the place of beginning and traced the lot by metes and bounds with a definite frontage on a named street and a definite depth and recited the number of the block of which it was a portion. The main objection made was that the true lines of the property varied some degrees from the true points of the compass. The court referred to the contention as arguing "from the point of the utmost absurdity" and that no one could have been misled. No such general rule as those quoted was necessary to a holding that this description was sufficient.

E. E. McCalla Co. v. Sleeper, 105 Cal.App. 562, 288 P. 146, 147, is also cited in support of the rule that real property is described with sufficient particularity when the owner is enabled to identify land which is assessed without being misled by the description, and that the designation will be sufficient if it affords the owner the means of identification and does not positively mislead

him or is not calculated to mislead him. In that case, however, the owner had furnished a map which contained a description of the land and an identification of the various subdivisions amply sufficient to enable one accurately to determine and define the particular land assessed and a facsimile copy of the map was made and filed in the official assessor's Tax Book of Maps, designated as "Assessor's Map No. 10" and specially referred to and thereby became a part of the description of the property, and was therefore sufficient for the purpose of assessment. It should be noted moreover with reference to this and the other California cases cited that the California statute required that where land was not in a congressional subdivision so that it could be described by township, range, section and fractional section, it should be described by metes and bounds "or other description sufficient to identify it. * * *" Pol. Code, sec. 3650. The Nevada statute requires "a description" of the land.

Appellant also cites People v. McCreery, 1868, 34 Cal. 432. However, the property assessed was personal property whose method of description was covered by specific statutory provisions, which the court held were satisfied. This case is further considered in our discussion of the curative provisions of our statute.

In Keely v. Sanders, 99 U.S. 441, 25 L.Ed. 327, although the description was meager, the location of the property was fixed at the intersection of two streets and as a part of a given lot number, with the acreage recited, the name of the city, the district and the persons to whom assessed. It was admitted by the parties attacking the sale "that this was a true description, quite sufficient to identify the property." The supreme court was also largely governed by the act of congress which the court construed to be conclusive evidence of the validity of the tax sale. The case is of no great assistance.

In Cooper v. Holmes, 71 Md. 20, 17 A. 711, the property was assessed to one John Cooper as a 200 acre parcel in Blandensburg district in Prince George's County

called "Pleasant Prospect." "Pleasant Prospect" apparently clearly identified the property in question, and the court held the description sufficient. Even so, it should be noted that this case is a rather extreme application of the rule.

In Langley v. Batchelder, 69 N.H. 566, 46 A. 1085, the court was engaged in construing the particular New Hampshire statute requiring a "resident list" and a "nonresident list," and one of which required a particular description and one of which did not. The opinion concerned itself entirely with determining the intent of the legislature.

Morton v. Sloan, 96 Cal.App. 747, 275 P. 223 affords appellant no assistance. In that case the lots were actually assessed by lot and block numbers, and the street boundaries given. The description was naturally held sufficient, although it had failed to comply with the statutory requirement that it refer to the official map.

The same is true of the case of Schainman v. All Persons, and Schainman v. Hunter, 96 Cal.App. 753, 275 P. 225.

Appellant relies particularly upon these California cases for the reason that the block books used under authority of the board of supervisors in the California cases are said to correspond with the assessment cards used by the assessor of Lyon County. Even though there may be some analogy in such use, the fact remains that in the California cases referred to the property was actually assessed by lot and block numbers, as distinguised from the assessment in the instant case of "filling station lot 300 feet" assessed to T. R. Harris, Fernley, Nevada.

Ehret v. Price, 122 Okl. 277, 254 P. 748, 749, 751, is cited in support of the rule that a description, however general and indefinite it may be, if by intrinsic evidence it can be made practically certain what property it was intended to cover, will be sufficient. This rule was in that case invoked by a foreclosing mortgagee whose

mortgage covered the identical land owned by the company and conveyed by the company's trustee to one Overholser and by him to the plaintiffs in error. Attached to the mortgage, as exhibit A, was a map showing the land, and the court held that this afforded "a means of certain identification."

Lehman v. Pierce, 109 Ind.App. 497, 36 N.E.2d 952, is not in point. The defendant had agreed in writing that she had agreed to hold in trust for certain others "the farm" conveyed to her by her father, and the court permitted this property to be identified by exact description, in a suit to enforce the trust.

In Craven County v. Parker, 194 N.C. 561, 140 S.E. 155, 157, the description seems to us not entirely satisfactory, but following a long line of South Carolina decisions and holding that the only point was "whether the land in question can be identified," the court held this description sufficient: "Richard Parker, 250 acres, Washington road, No.1 township." The provisions of the North Carolina statute do not appear. It may well be that in the particular county in which the assessment was made, this description was readily understood. In any event this was not an action involving the title to the land, growing out of the tax proceedings. It was simply a suit to collect the tax and to foreclose the county's certificates of sale to enforce such collection. The owner was defending against the suit on the grounds, first, that the sheriff should have levied on the taxpayer's personal property first, and secondly, that the real property was not sufficiently described. The court distinguished this from an earlier North Carolina case in which the same court had held insufficient a similar kind of description, where there was a "discrepancy" in the acreage assessed. In the case at bar no acreage or square footage at all is indicated, only one dimension being given.

There are few cases in this court on the subject matter. Appellant cites State v. Wells Fargo & Co., 38 Nev. 505, 150 P. 836, 844, in which, however, the court noted

that it is essential to the validity of the assessment list and of all proceedings founded on it "that it should contain a description of all the property intended to be assessed. * * * Minute particularity is not required, any description being sufficient which identifies the particular property so clearly that the owner cannot be misled." The facts in the case, however, do not afford to this holding a great deal of weight as authority for the sufficiency of the description in the instant case. The assessor described the actual line of the Southern Pacific Company through the county over which Wells Fargo & Co. operated its express business and placed a valuation of $300 per mile for the intrastate business transacted. It covered the company's personal property, both tangible and intangible. This court quoted with approval 37 Cyc. 1051, not only in support of the general rule mentioned above, but to the effect that a detailed description would be more easily dispensed with where the assessor was unable to ascertain the exact nature of the property. The main contention had to do with assessing the intangibles, the restriction of the assessment to the intrastate as distinguished from the interstate business, the reasonableness of the valuation fixed on a mileage basis, and the question whether the same was excessive.

In State of Nevada v. Real Del Monte Mining Co., 1 Nev. 523, where the assessor described the property as "one mine of 4400 feet situate on Last Chance Hill," Judge BEATTY pointed out that this might convey no fixed idea to the generality of English scholars or persons without a knowledge of the mining laws and customs of this and some of the neighboring states, but was quite clear to us as meaning so many feet of a certain lode, vein, etc. The only question for determination in the case was as to whether the assessor was assessing the full and complete title to the land or only the possessory title. The court held that it was the intention of the assessor to assess only the possessory right, and upheld the assessment. Insufficiency of the description was not

otherwise charged and no issue thereon made. The case can hardly be cited as authority on a point not raised. As noted by Justice Holmes, cases cannot be urged as authority for every point "that may be found lurking in the record" where no issue of such point was made before the court.

Terry v. Berry, 13 Nev. 514, is not in point. A sheriff's deed, in describing certain land, had placed it in the wrong township, but the actual metes and bounds description recited in the deed showed precisely where the land was. Judge HAWLEY held that the references and monuments specified in the deed controlled the other parts of the description and in the event of a discrepancy or a mistake are to be taken instead of the designation of the land as being in any named township. It is true that in Brown v. Warren, 16 Nev. 228, this court held that a deed conveying "all the real estate, water rights and property of every description, real and personal, in the State of Nevada, belonging to the parties of the first part" conveyed the property involved in the suit, which property was capable of identification by parol. This is not authority for a conclusion that an assessment against John Doe for "all of the property owned by him in the State of Nevada" is a valid assessment under our statutes.

As has been noted, the statutes of some of the states indicate the nature of the description required in an assessment. The Nevada statutes throw but little light upon the exact nature of the description that the assessor is required to use in making his assessment. Under Nevada Compiled Laws, sec. 6423, every person is required to deliver to the assessor under oath a list of real estate owned by him, etc. "which list shall particularly describe each tract of land and each city or town lot contained therein (so that the same may be found or known by such description) * * *." Section 6447, requiring the county treasurer to advertise for sale property upon which delinquent taxes are a lien, requires him

to give a notice containing "the description of the property on which such taxes are a lien and which will be sold for the payment thereof." Section 6448 requires the treasurer to give the purchaser at tax sale a certificate containing, among other things, "a description of the land sold." If the property is not redeemed, sec. 6449 directs the treasurer to give the purchaser "a deed of the property." Certainly some kind of "description" is clearly indicated, and the so-called description under which the property was assessed in the present case falls as far short of being an identification of the property as almost any description that could be cited as an example.

■ Appellant maintains that on the back of the assessment roll the assessor platted the property in question. However, the assessment made no reference to such plat. Appellant contends also that this parcel, comprising approximately one acre, was deducted from the assessment to appellant's predecessor, one Erquiaga, whose assessment was reduced from 66 acres to 65 acres. It is difficult to see how such fact can relieve the insufficiency of the description. He also maintains that the lot so assessed was the same property described in a certain deed from Erquiaga to Harris. Such fact, however, does not appear in the assessment. He also insists that the fact that the name "Harris Service Station" appeared upon the property (at least at the time of the trial) served to identify it. We do not consider this fact a sufficient identification, nor did such fact appear on the assessment. It is also asserted that as there was no other property "in the vicinity" used as a filling station, the term "filling station lot" sufficiently identified it. This does not follow.

■ In holding, as we do, that the description in the present case was insufficient to support a valid assessment, we find it neither necessary nor proper to promulgate a set of rules for the assistance of county assessors in their description or "identification" of property assessed on their rolls, nor do we imply that a complete and perfect description is essential. We are unable,

however, to agree with appellant's statement that "the most that can be claimed here is that the description was abbreviated."

Respondents rely upon the general rule of law recited in 51 Am.Jur. 636 as follows: "It is inherently essential to the validity of an assessment of real estate that the assessment contain a description of the property sufficiently accurate and certain to enable the owner readily to identify it as his and to furnish a basis for the tax lien and for proceeding in rem against the tract, should such become necessary for the collection of the tax." It is further stated: "A description in an assessment which is inherently defective cannot be supported by extrinsic evidence, and the fact that the owner was not actually misled does not validate the assessment." The rule itself presents no great difficulty. It is in the application of such rule to the description used in each given case that has in most instances caused the courts the greatest concern. It is natural that cases involving varying degrees of certainty (or uncertainty, depending upon the point of view) as to the description have not been uniform in applying the rule. The degrees of uncertainty of description range from an assessment with an absolute lack of description to cases in which the description was claimed to be invalid because the degree of variation from the magnetic north was not recited. It would be futile to attempt to draw a conclusion from all of the cases which could serve to govern all future cases or even to govern the instant case. We can only conclude that the description given by the assessor in this case was inherently defective and insufficient to support the tax sale. In the annotation appearing at 67 A.L.R. 890, well over a hundred cases are digested in which tax sales were held to be void (in some cases voidable), for insufficiency of the description in the notice of tax sale, and in almost all of such cases the description serves far better to identify and describe the property than that appearing in the instant case. The author of the annotation says: "The general rule is that the

description of property in a notice of tax sale must be sufficiently definite and certain to make the land attempted to be described capable of identification, and an insufficient description in such a notice will render the tax sale certificate and tax deed based thereon void." Each case presents, of course, a distinct fact situation, and each separate description must be considered to determine its sufficiency. We are not dealing with the insufficiency of the description to fix the owner's personal liability for the taxes, but with cases where the proceeding is in rem. Nor is the situation changed by the fact that such actions to quiet title are often characterized as suits in equity.[1] We agree with the often-stated rule that the purpose of the requirement for a description is, first, to give the necessary information or notice of the tax assessed against the particular parcel, to the taxpayer himself; second, that the public may know what property is liable for the tax and is to be sold in case of nonpayment; and third, that the purchaser may obtain an adequate conveyance. See American Portland Cement Co. v. Certain Lands, 179 Ark. 553, 17 S.W.2d 281; People v. Southern Gem Co., 332 Ill. 370, 163 N.E. 825. These purposes entirely fail of accomplishment unless we hold that a purported description so insufficient as the present one is a "jurisdictional" defect and beyond the scope of the curative provisions of sec. 6449, N.C.L.

██ Appellant maintains with great earnestness that respondents may not attack the insufficiency of the description for the reason that respondent Harris himself furnished the description to the assessor. Numerous authorities are cited in support of this rule. The rule itself has been questioned by respectable authority

[1] But see opinion of Robinson, J. in Great Northern Ry. Co. v. Grand Forks County, 38 N.D. 1, 164 N.W. 320, 321. "In a statutory action like this it is sheer folly for counsel to talk about rules of equity. * * · * When the answer and evidence shows that a claim is based on a void assessment, tax sale, or tax deed, then it must be adjudged void as a matter of law, and there is no equity or discretion about it."

and has been limited by other authorities to cases in which the assessor used "the exact" description furnished by the taxpayer. See 61 C.J. 883 and cases therein cited. Power v. Bowdle, 3 N.D. 107, 54 N.W. 404, 21 L.R.A. 328, 44 Am.St.Rep. 511. However, it becomes unnecessary for us either to adopt or reject this rule for the reason that it is clear in any event that the assessor failed to use much material information given him by Harris in connection with the description. Harris advised the assessor that the property was a part of the Erquiaga farm and had been acquired from Erquiaga. The assessor could have used this information to obtain either an exact description or at least a sufficient description to satisfy all reasonable requirements. Harris told him at the time where the lot was. Such explanation must have shown its frontage upon the highway, its depth of 125 feet and the fact that it was adjacent to what was known as "the post office lot." Yet the assessor used none of this data, except one measurement of 300 feet. It is accordingly clear that appellant cannot invoke the rule, even if it should be adopted by this court, that respondents are barred from questioning the sufficiency of the description, by reason of the claim that they themselves furnished it.

But it is earnestly contended that the curative portions of sec. 6449 N.C.L. cure any defect in the sufficiency of the description. Said section reads as follows: "§ 6449. If the property is not redeemed within the time allowed by law for its redemption, the treasurer, or his successor in office, must make to the purchaser, or his assignee, a deed of the property, reciting in the deed substantially the matters contained in the certificate of sale, and that no person has redeemed the property during the time allowed for its redemption. The treasurer shall be allowed a fee of three dollars for making such deed, which, together with the cost of acknowledging the same, shall be paid by the purchaser; provided, that when the deed is made to the county as the purchaser the treasurer shall make the deed and the county clerk

shall take the acknowledgment without charge; provided further, that such deeds hereafter issued shall be recorded in the office of the county recorder within thirty days from the date of expiration of the period of redemption. If not so recorded, such deeds, and all proceedings relating thereto from and including the assessment, shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate or any portion thereof, where the latter conveyance shall be first duly recorded. All such deeds, whether heretofore or hereafter issued, are primary evidence that the property was assessed as required by law; that the property was equalized as required by law; that the taxes were levied in accordance with law; that the taxes were not paid; that at a proper time and place the property was sold as prescribed by law, and by the proper officer; that the property was not redeemed; that the person who executed the deed was the proper officer; that where the real estate was sold to pay taxes on personal property, the real estate belonged to the person liable to pay the tax; and are (except as against actual fraud) conclusive evidence of the regularity of all other proceedings, from the assessment by the assessor, inclusive, up to the execution of the deed. Such deed conveys to the purchaser the absolute title to the property described therein, free of all incumbrances, except when the land is owned by the United States, or this state, in which case it is prima-facie evidence of the right of possession, accrued as of the date of the deed to the purchaser. No tax heretofore or hereafter assessed upon any property, or sale therefor, shall be held invalid by any court of this state on account of any irregularity in any assessment, or on account of any assessment or tax roll not having been made or proceeding had within the time required by law, or on account of any other irregularity, informality, omission, mistake or want of any matter of form or substance in any proceedings which the legislature might have dispensed with in the

first place if it had seen fit so to do, and that does not affect the substantial property rights of persons whose property is taxed; and all such proceedings in assessing and levying taxes, and in the sale and conveyance therefor, shall be presumed by all the courts of this state to be legal until the contrary is affirmatively shown. * * *."

Assuming then that the delinquent tax deed to Lyon County was "primary evidence that the property was assessed as required by law," respondents say that they assumed the burden of proof in the district court and introduced the original records from which it is claimed the insufficiency of the description in the assessment definitely appears, and that they accordingly proved that the property was not "assessed as required by law." Holding, as we do, that respondents are correct in this contention, and it appearing that the provision of the section making the deed "conclusive evidence of the regularity of all other proceedings" has no application here, the curative portion of the section requiring consideration is the last sentence of sec. 6449, as above quoted. In this regard respondents rely upon the rule cited in 61 C.J. 725, to the effect that "want of a sufficient description by which real estate can be identified is generally considered a jurisdictional defect not within the healing power of a curative statute." Such rule seems well supported in reason, and the cases cited in the note substantiate the text. In Manby v. Voorhees, 27 N.M. 511, 203 P. 543, 549, the supreme court of New Mexico, referring to an earlier decision on the point, said: "In that case the former cases were collected, and we held in terms that the curative provisions of the statute did not apply to jurisdictional defects in tax proceedings. We now add to the foregoing list of defects which are jurisdictional, and which are not cured by the statute, that of failure of description sufficient to identify the land. This must necessarily be so. If you have no description, you have no subject-matter upon which the tax can be laid, and you have no property which can

be conveyed to the purchaser." Appellant seeks to distinguish this case because the New Mexico statute provided that no tax sale should be declared void or set aside on account of any irregularity in listing the same on the tax roll, etc., "if such property is described in the assessment roll * * * by such description as will serve to indentify (identify) the same." Laws 1899, c. 22, sec. 25. But this is even a more lenient requirement than our own statutory requirement for "a description" of the property. As did this court in the Menteberry case (Menteberry v. Giacometto) 51 Nev. 7, 267 P. 49, the New Mexico court had formerly held that a premature sale was a mere irregularity and not jurisdictional (Maxwell v. Page, 23 N.M. 356, 168 P. 492, 5 A.L.R. 155) and had also formerly held that the restriction of defenses to tax sales to the fact that the taxes had been paid, or the property was not subject to taxation, was a valid exercise of statutory power. Straus v. Foxworth, 16 N.M. 442, 117 P. 831. It adheres, however, to its holding that where the description on the assessment roll does not serve to identify the land as the subject of taxation, it forms no legal basis for the assessment, despite the curative statute, and that the assessing of the property is one of the essentials of taxation. The California cases relied upon by appellant to the effect that insufficient descriptions are within the purview of the curative statute still concede that an actual lack of assessment would not be within such purview. The curative statute under consideration in the California cases mentioned was retrospective in its application, but this fact hardly reconciles this kind of rationalization. It has been stated that a curative statute must by its very nature be retrospective. See Annotation 140 A.L.R. 959. The Nevada statute is both retrospective and prospective. Under it all tax deeds "whether heretofore or hereafter issued" are primary evidence of certain things and conclusive evidence of others, and "no tax heretofore or hereafter assessed" shall be held invalid under certain circumstances not affecting "the substantial property rights of

persons whose property is taxed." To "cure" a defect or irregularity before it comes into existence does indeed appear to be an anomaly, but the courts appear largely to have abandoned any distinction between retrospective curative acts and prospective "curative" acts. The divergence does not appear to lie here or in a determination that an insufficient description, or the lack of description, or lack of assessment, is classified as "jurisdictional" or that it results in the taking of property without due process. Appellant cites one early California case, namely, People v. Holladay, 1864, 25 Cal. 300, to the effect that "matters of description constituted the more common and obvious defects in such assessments and to hold that such defects are not cured, so far as the validity of the assessment is concerned, would be to defeat the main object and purpose of the act." However, the act in question provided: "The assessments of taxes upon all property, real and personal, in the several counties of this state, for state or county purposes, for the fiscal year * * * shall be and are hereby legalized and confirmed and are rendered valid and binding, both in law and equity, against the persons and property assessed." St. 1861, p. 471. The defense of the insufficiency of the description was raised against a suit by the state to recover the taxes. No question as to determination of title was involved. As against the holding of the curative effect of this statute, even for the particular purpose of a suit to recover the taxes, two of the justices dissented, maintaining that the matters intended to be cured by the statute were sundry formalities similar to the insufficiency of the notice which this court held was cured by our statute in Menteberry v. Giacometto, 51 Nev. 7, 267 P. 49. That case is likewise relied upon by respondents as a recognition of the curative effect of the statute. It dealt, however, as above noted, with an insufficient notice, which notice the legislature could have shortened or even dispensed with entirely in its judgment. If People v. Holladay, supra, may be said to be in point at all, we can only say that it is contrary

to what appears to be the better rule. People v. McCreery, 1868, 34 Cal. 432, held that the doctrine of People v. Holladay, supra, was limited by People v. San Francisco Savings Union, 31 Cal. 132, which held that the foundation for tax proceedings was the valuation and that the assessor's failure in this regard was not within the scope of a curative statute. It applied the curative provisions of the statute to the description only to the extent that the act "corrects all errors of mere mode and form." Augusti v. Lawless Heirs, 45 La.Ann. 1370, 14 So. 228, is to the effect that an assessment which does not contain a description sufficient to identify the property assessed is illegal and void, and therefore beyond the healing power of a curative statute—a sufficient description of the property being an indispensable prerequisite to the exercise of the taxing power, and that such indispensable prerequisite cannot be supplied or cured by legislation. The case is well reasoned, both in the original opinion and on rehearing.

Under the North Dakota statute the courts were given the power to amend and correct irregularities and defects in assessments, but it was held in Great Northern Railway Co. v. Grand Forks County, 38 N. D. 1, 164 N.W. 320, that an insufficient description rendered the assessment void, and not subject to being cured. The description involved in that case was much more complete than in the instant case, but was held so insufficient as to be void. Reference was made by the court to an earlier North Dakota case holding the description insufficient, in which the property was described as being in lot 2 "N. 23 x 200 ft. deep," (correctly naming the owner), because no point was given as the starting point for the dimensions 23x200 ft. "Before there can be any valid tax against land," says the court, "there must be a description sufficiently accurate and definite to enable the owner and others to identify it." The defective description was held to be beyond the power of the court, in its

statutory authority, to cure. Many other cases support the same rule.

We are thus compelled to start from the premise that the validity of the assessment list and of all proceedings founded on it depend upon the condition that such assessment list contain a description of the property intended to be assessed. Such description is essential to its validity. State v. Wells Fargo & Co., supra. Under present statutory requirements the sufficiency of such description must necessarily be determined in each case. Without a description the assessment is of no effect as supporting further proceedings resulting in a delinquent tax sale. Patently, this is not affected by the provisions of sec. 6457, N.C.L. authorizing the district attorney in suits to collect taxes to make additional and more certain description than that contained in the assessment roll as he may deem proper, and authorizing him in such case to prove that the property described in the complaint is the same as that described in the assessment roll. Such situation is not involved here, even though we concede the implication that the original description in the assessment, in such suits, need not be perfect.

Appellant maintains that the judgment should be reversed because it does not appear that plaintiffs tendered payment of the taxes. In view of what we have said as to the invalidity of the tax sale and in view of the record as it comes to this court, the point is not well taken.

Appellant's brief devotes considerable time to a learned discussion of the trial court's finding and conclusion that the tax proceedings culminating in the tax deed to Lyon County deprived the respondents of their property without due process of law. He points out that the only constitutional provision that could possibly have been violated is the requirement that taxation be uniform, and cites Hagar v. Reclamation District, 111 U.S.

701, 4 S.Ct. 663, 28 L.Ed. 569, and Maxwell v. Page, 23 N.M. 356, 168 P. 492, 5 A.L.R. 155. It is not necessary to a decision in this case that we determine that the tax sale to Lyon County deprived respondents of their property without due process. It is well, however, to note our further constitutional provision, article X, section 1, N.C.L. sec. 145, requiring the legislature to "prescribe such regulations as shall secure a just valuation for taxation of all property." Appellant makes the broad assertion, but without citation of authority, that the legislature could dispense with any description whatsoever in the assessment, and that the curative provisions of sec. 6449, in effect, accomplish just that. Until and unless the legislature goes so far as to eliminate all requirements for descriptions of property in tax rolls, we are loath to ascribe to it any such intent. If sec. 6449 was intended by the legislature to mean that all statutory requirements for tax proceedings were merely directory and that a tax deed wiped out all defects, including those commonly classed as jurisdictional, the saving clause in sec. 6449—curing any irregularity, informality, omission, mistake, etc., "that does not affect the substantial property rights of persons whose property is taxed" would be meaningless, as well as the presumption that all such sales and conveyances be presumed legal "until the contrary is affirmatively shown." In other words, it becomes unnecessary so to construe sec. 6449 as to require it for the purposes of this case to be measured by the limitations of article X, section 1 of the constitution.

Respondents, in the trial court and in this court, attack the subsequent sale by Lyon County to appellant. The trial court, as noted, held that sale to be void and respondents still contend that it is void, by reason of the failure on the part of the county to give the statutory notice. Appellant insists that if the legal title passed to the county by the tax deed, respondents are in no position to attack the county's deed to him. Holding, as we

do, that the purported tax deed to Lyon County was void by reason of the insufficiency of the description in the assessment, it becomes unnecessary to determine such point. See, however, Gold Circle Crown Mining Co. v. Getchell, 58 Nev. 288, 76 P.2d 1097.

 Appellant further asserts, as grounds for reversal, alleged errors on the part of the trial court in its rulings on the admissibility of certain evidence. These asserted errors were not referred to in the oral argument, and were summarily treated in appellant's opening brief. His closing brief refers only to the alleged error of the trial court in receiving the testimony of Harris that he had received no notice of the assessment. It does not appear that the trial court gave any effect to this testimony or considered a possible lack of notice any ground for holding the assessment invalid. Further objection is made to a ruling made by the trial court refusing to admit in evidence the tax deed to Lyon County without the laying of further foundation. It appears, however, that the trial court thereafter did admit the deed in evidence and gave the same due consideration. We find no material error in these or any other rulings to which exception is taken.

For the reasons given, the judgment and order denying the motion for a new trial are affirmed.

HORSEY, J., concurs.

EATHER, C. J., because of illness, did not participate in the preparation and rendition of the foregoing opinion.