Punty BOGART and Peter D. Bogart

v.

The UNITED STATES.

No. 16–75.

United States Court of Claims.

March 17, 1976.

Peter D. Bogart, pro se.

Dennis A. Dutterer, Washington, D. C., with whom was Asst. Atty. Gen. Peter R. Taft, Washington, D. C., for defendant.

Before SKELTON, NICHOLS and BENNETT, Judges.

SKELTON, Judge.

In this case, James H. and Yvonne Lathrop (the Lathrops) as mortgagors, on Au-

gust 1, 1960, executed and delivered to Pioneer Title Insurance Company of Nevada (Pioneer), as trustee, a deed of trust to secure a note they owed to the United States (Mortgagee), in the sum of $9,280, on certain described lands containing 160 acres in Lyon County, Nevada, being the N.W. ¼ of Section 17, Township 17 North, Range 23 East, Mt. Diablo Base and Meridian; except the East ½ thereof. The deed of trust provided in paragraph 11 that after the note had been paid, Pioneer was to reconvey the property. Paragraph 11 of the deed of trust provided as follows:

Upon written request of BENEFICIARY stating that all sums secured hereby have been paid, and upon surrender of this deed of trust and said note to TRUSTEE for cancellation and retention and upon payment of its fees, TRUSTEE shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

The deed of trust also contained various provisions requiring the mortgagors to pay all taxes, insurance, and maintenance charges on the property, as well as all claims against it; and also provided that the mortgagee would enforce these provisions.

It developed that the Lathrops did not pay the taxes levied and assessed against the property as required by law and in May 1964 the property was sold to Lyon County, Nevada, by a tax deed because of the non-payment of the taxes. The plaintiff, Peter Bogart, examined the records of Lyon County, and discovered that various parcels of land had been sold to the county by tax deeds to satisfy delinquent taxes and that they would be auctioned to the highest bidder on a certain date. In "November/December 1965" the plaintiff, Punty Bogart acting through Peter Bogart, purchased the property at a public tax sale from Lyon County by a tax deed.

In August 1970, the debt of the Lathrops having been paid to the United States, the latter directed Pioneer to reconvey the property to the Lathrops in accordance with paragraph 11 of the deed of trust, which was done.

In 1974, the Lathrops filed suit in a Nevada state district court in Lyon County against Punty Bogart to set aside as void the tax sale of the property to Lyon County and the subsequent sale by the county to Punty Bogart on the ground that no notice had ever been mailed or delivered to them of the assessment of delinquent taxes, the delinquency deed, the tax sale, or their redemption rights. The district court granted summary judgment to the Lathrops, holding the tax sale to the county and subsequent sale to Punty Bogart void because of the failure of the county to send the above-described notice to the Lathrops. Punty Bogart appealed the case to the Supreme Court of Nevada, which handed down a judgment in *Bogart v. Lathrop*, 523 P.2d 838 (Nev.Sup.Ct.1974) affirming the judgment of the district court that the tax sale and subsequent proceedings were void, saying:

Failure to send such notice [of assessments, delinquency, tax deed, tax sale, or redemption rights of respondents] resulted in a jurisdictional defect, which rendered all subsequent proceedings void. *Jackson v. Harris, supra* [64 Neb. 339, 183 P.2d 161 (1947)]; *Davison v. Gowen*, 69 Nev. 273, 249 P.2d 225 (1952), recognizing the general rule.

\*       \*       \*       \*       \*       \*

The order granting summary judgment [for the Lathrops] is affirmed. [*Id.* at 840.]

Plaintiff, Peter Bogart, alleges he is the husband of Punty Bogart and that as such he has marital rights in the property. No explanation is given as to how or why he has marital rights in the property during the lifetime of his wife. However, we do not need to belabor this point as it does not control our decision.

Plaintiffs indicate that after the Supreme Court of Nevada nullified their title to the property in question, they filed suit in federal court for relief, which suit is still pending, but no information is given where the suit is filed, what it involves, nor the status of the case. Again, we pass over this circumstance, as it would not affect our decision, unless, of course, it involves the identical question before us. If this is true, we have no knowledge of it.

On January 21, 1975, the plaintiffs filed this suit seeking over $10,000 in damages (the exact amount as yet undetermined) .and for an order directing the defendants to vacate and cancel their request to the trustee to reconvey the property and directing the trustee to cancel the "full conveyance" of said land, and to record said cancellation in official records. The General Services Administrator is made a party defendant along with the United States. We agree with defendant that the jurisdiction of this court is confined to money judgments in suits against the United States and that if the relief sought is against others than the United States, it is not within the jurisdiction of this court. *United States v. Sherwood*, 312 U.S. 584, 588, 61 S.Ct. 767, 770, 85 L.Ed. 1058, 1062 (1941). Accordingly, the suit against the General Services Administrator must be dismissed as beyond the jurisdiction of this court.

The defendant has moved for a dismissal of the case on the ground that the plaintiffs have failed to state a claim upon which relief can be granted against the United States. The plaintiffs oppose the Government's motion and move for a partial summary judgment on liability. We hold for the Government.

Plaintiffs are not entitled to recover against the United States for several reasons. In the first place, there is no privity of contract between them and the Government with respect to the events in this case. The plaintiffs were not parties to the deed of trust, nor to the reconveyance of the land, nor to any transaction with the United States. Plaintiffs were complete strangers to the whole transaction. As far as the record shows, the Lathrops and the United States did not know the plaintiffs and did not even know they existed at any stage of the proceedings with reference to the deed of trust and reconveyance. Plaintiffs furnished none of the consideration for the transaction between the Lathrops and the United States and were complete outsiders and strangers as far as those parties were concerned. No duties or obligations were owing from any of the parties to the deed of trust to the plaintiffs. Apparently the plaintiffs are claiming damages on the theory that they are third party beneficiaries of the deed of trust. This is fanciful indeed, because, as stated above, none of the parties to the deed of trust even knew plaintiffs existed and could not, for that reason, among others, have intended that the deed of trust would be for their benefit. The general rule is set forth in *German Alliance Insurance Co. v. Home Water Supply Co.*, 226 U.S. 220, 230, 33 S.Ct. 32, 35, 57 L.Ed. 195, 200 (1912), wherein the Court held:

 \* \* \* Before a stranger can vail himself of the exceptional privilege of suing for a breach of an agreement, to which he is not a party, he must, at least show that it was intended for his direct benefit. \* \* \*

It would be strange, indeed, to sustain plaintiffs' argument that the deed of trust was made for their benefit when they were strangers to the transaction and the parties did not even know the plaintiffs. Other cases supporting the *German Alliance* case, *supra*, are *Hall v. Gardiner*, 75 U.S.App.D.C. 226, 126 F.2d 227 (1942); *United States v. Huff*, 165 F.2d 720 (5th Cir. 1948); *Commonwealth of Pennsylvania v. National Association of Flood Insurers*, 378 F.Supp. 1339 (M.D.Pa.1974); and 17 Am.Jur.2d Contracts §§ 302–319 (1964). The claim of plaintiffs as third party beneficiaries of the deed of trust must be, and is, denied.

Plaintiffs are not entitled to recover because the Supreme Court of Nevada has held in the above *Bogart* case to

which Punty Bogart was a party that the tax deed to Lyon County and all subsequent proceedings, which included the deed from the county to Punty Bogart, were void. That case decided and held that the plaintiffs have no title to the property. The decision in that case by the highest court in the State of Nevada has never been set aside and is the law as far as plaintiffs' lack of title is concerned. Plaintiffs are bound by that decision by the principle of collateral estoppel. *Edgar v. United States*, 171 F.Supp. 243, 145 Ct.Cl. 9 (1959); *Larsen v. United States*, 170 F.Supp. 806, 145 Ct.Cl. 178 (1959); *McGinty v. United States*, 151 Ct.Cl. 399 (1960), *cert. denied*, 368 U.S. 867, 82 S.Ct. 115, 7 L.Ed.2d 63 (1961); and *Brandt & Brandt Printers, Inc. v. United States*, 300 F.2d 457, 156 Ct.Cl. 582 (1962). The issue of title was decided adversely to plaintiffs in the Nevada case and it cannot be litigated again in this court. Without title to the land, the plaintiffs have not alleged a claim against the United States on which relief can be granted.

■ Plaintiffs contend that the decision in Nevada against them in the *Bogart* case is null and void because it was obtained by fraud. We have read the decision of the Supreme Court of Nevada in that case and have found it to be regular and valid on its face, and we are required to give full faith and credit to it so long as it has not been set aside or overruled. We have no authority to set aside that decision, as that would be the exercise of equity powers which this court does not possess. *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1968). For the same reason we have no authority to issue an order requested by plaintiffs directing the defendants to vacate and cancel their request to the trustee to reconvey and further directing the trustee to cancel the full conveyance of the land, and to record such cancellation in official records. If the plaintiffs wish to set aside the decision of the Supreme Court of Nevada, they will have to litigate the matter in a Nevada court having general equity powers.

■ Plaintiffs say that when the deed of trust was recorded it created a contract between the Government and the whole world so that if the Government failed to enforce the provisions of the deed of trust, anyone, including the plaintiffs, could sue the Government for damages. In line with this reasoning, plaintiffs argue that when the Government failed to see that the Lathrops paid the taxes on the land and failed to get tax receipts from them showing tax payments, the Government breached the contract with the whole world, including the plaintiffs. This argument has no substance and is frivolous. The purpose of recording a deed of trust is to give notice to everyone of its contents, but it does not create any rights in favor of strangers to the document, such as the plaintiffs here.

■ Plaintiffs also contend that the deed of trust provided that upon the payment of the note which it secured, the trustee was required to reconvey the property to "the person or persons legally entitled thereto," and that since plaintiffs had acquired a tax deed to the land, they were the persons "legally entitled" to the conveyance by the trustee. This argument is unpersuasive. It will be noted that paragraph 11 of the deed of trust provided that upon the payment of the note, the trustee "shall reconvey, *without warranty*, the property" (emphasis supplied), and that "the grantee in such *reconveyance* may be described as 'the person or persons legally entitled thereto.'" (Emphasis supplied.) The word "reconvey" has a well-defined meaning. It is defined in Webster's Third New International Dictionary (1967 ed.) as follows:

To convey back (as to a previous place or position); *to restore (as an estate) to a previous owner.* [Emphasis supplied.]

Such language did not include the plaintiffs. A conveyance to them by the Government would not have been a "reconveyance" to them nor a "restoration" to them as "previous owners." The language as to reconveyance clearly referred to the Lathrops. Furthermore, the deed of trust required the reconveyance to be "without warranty." Therefore, the reconveyance

was not a guaranty or warranty of title by the Government, although the plaintiffs would have it otherwise.

It should be pointed out that under the general rule the title to the land automatically reverted to the Lathrops when the note was paid even if there had been no reconveyance to them. This rule is stated in 55 Am.Jur.2d, *Mortgages* § 403 at 442 (1971), as follows:

Where, as is now generally the case, a mortgage is regarded as a mere security, it is certain that the mortgagee's interest, whatever name be given, it, is terminated by the payment of the debt secured, whether made before or after default, and *no conveyance by the mortgagee is necessary to perfect the mortgagor's estate.*[11] *In other words, upon payment of the debt all outstanding interests of the mortgagee in the land revert immediately to the mortgagor by operation of law.* [Emphasis supplied.]

[11] * * *; *Nilson v. Sarment*, 153 Cal. 524, 96 P. 315; * * *. [Footnote 12 omitted.]

Accordingly, the reconveyance by Pioneer to the Lathrops added nothing to their estate in the land that they had when the note was paid. Under these circumstances, the Government could have no liability to the plaintiffs by reason of the reconveyance by Pioneer.

In view of our conclusions set forth above, we do not reach the various other arguments and contentions of the plaintiffs.

We hold that the plaintiffs are not entitled to recover, and that judgment should be entered for defendant.

Plaintiffs' motion for partial summary judgment is denied, defendant's motion for dismissal is granted, and plaintiffs' petition is dismissed.